WALLIS, J.
James J. Kellner and Patricia R. Ber-gerson (“Appellants”) appeal the lower court’s final judgment after a jury returned a verdict in favor of Cynthia A. David and Frank David (“Appellees”). Appellants raise three issues: (1) the exclusion of Kellner’s testimony about his measurements at the accident scene; (2) the denial of Appellants’ motions contesting the $420,000 award to Cynthia David (“David”) for loss of future earning capacity; and (3) the admission of testimony about Kellner’s prescription drug use. We affirm the trial court’s decision to exclude Kellner’s testimony regarding the accident scene measurements. We reverse on issue two because the evidence only supports an award of $390,000 for David’s loss of future earning capacity. Finally, because we find Appellants’ argument concerning the prescription drug testimony to be without merit, we affirm the trial court without elaboration on that issue.
On April 30, 2008, David was riding a motorcycle on a highway with a posted speed limit of forty-five miles per hour. Kellner, driving an SUV owned by Berger-son, exited a parking lot by turning left onto the highway, resulting in a collision between David’s motorcycle and Kellner’s SUV. Kellner testified that he did not see David’s motorcycle until immediately before the collision.
Appellees filed a negligence action against Appellants. Frank David also sought damages for loss of consortium. Appellants filed separate answers and affirmative defenses alleging David was comparatively negligent by exceeding the posted speed limit. In depositions of both lay and expert witnesses, the parties spent significant time discussing David’s position and speed leading up to the point of impact.
The trial court set March 4, 2011, as the deadline to disclose all witnesses to be used at trial. Appellees’ February 25, 2011 witness list disclosed Alan D. Stokes as an expert in the field of accident reconstruction. Kellner’s March 2, 2011 witness list named James R. Ipser, Ph.D., as an expert in the field of “Accident Reconstruction/Biomechanical.” The March 2 disclosure also listed Kellner as a witness with the topic of his testimony as “liability and damages.”[1] On March 22, 2011, Kell-ner filed a Notice of Withdrawal of Expert Witness, removing Ipser from his witness list. Appellants did not retain another accident reconstructionist.
On August 30, 2011, Appellees filed a synopsis of witness testimony describing Stokes as “[a]n engineer that viewed the video surveillance tape and calculated [David’s] speed and her opportunity to avoid [Kellner].” The synopsis further disclosed that Stokes would “present a breakdown of the [surveillance] video and an animation of the accident.”
On August 31, 2011, Appellants filed separate witness testimony synopses. Appellants listed neither an accident recon-structionist nor Kellner as witnesses. The synopses provided no discussion of distance measurements or the calculation of David’s speed. Appellants’ exhibit lists, dated August 31, 2011, were similarly devoid of any items referencing distance measurements or speed estimates.
*1045 The trial began on Monday, September 12, 2011. Multiple eye-witnesses testified, providing conflicting testimony concerning whether David was speeding pri- or to impact. Additional trial evidence included surveillance camera footage from a business, which captured the scene of the accident in multiple frames. Appel-lees’ expert, Stokes,[2] used accident scene measurements and a detailed analysis of the surveillance video footage to establish David’s speed at the time of the accident.[3] Stokes did not physically measure the accident scene, opting to use computer programs, Google Aerial and Google Earth Pro, for his measurements. Appellants’ cross-examination of Stokes challenged the accuracy of his virtual measurements and corresponding speed calculations.
Appellants called Kellner to challenge Stokes’ measurements, resulting in the following exchange:
Q: If you want to, could you go out today and identify that point [where the motorcycle appears in the 32nd frame of the surveillance video footage] based on the car that is parked there now?
A: Yes, sir.
Q: And this past Sunday at my request did you, in fact, do that?
A: Yes, I did.
Q: And did you also identify the approximate point of the impact between your vehicle and the motorcycle?
THE COURT: You all need to come up here please.
(At sidebar.)
THE COURT: Where are you going with this? It’s not happening. Number one, it was past discovery cut off. It’s been done after discovery cut off. It’s discovery. He’s not an expert. You’re not going there.
(Sidebar ends).
BY [Appellants’ counsel]:
Q: Okay. I don’t want to talk about anything that happened on Sunday.
A: Okay.
Q: So we’re not going to do that.
A: All right.
Q: Can you give me an approximation, based on your best estimate having gone by that location every day virtually, of the distance from where your vehicle was at the time of the accident to the point depicted by the motorcycle right now?
[Appellees’ counsel]: We would object to this question and answer, Your Honor. THE COURT: Sustained.
[Appellants’ counsel]: I don’t know how to cure it. So can we come up?
(At sidebar.)
THE COURT: Was this covered in the deposition, in any deposition that was taken of this witness?
[Appellees’ counsel]: No.
THE COURT: Okay. You’re not going to turn him into any kind of accident reconstructionist.
*1046 [Appellants’ counsel]: I’m not going to try to. Distances don’t require an expert to measure.
THE COURT: He went out on Sunday, so he’s going to approximate what he knew on Sunday.
[Appellants’ counsel]: No, he’s—
THE COURT: No. You’re not going to ask the question.
During a recess, Appellants proffered testimony revealing that Kellner physically measured the distance discussed in Stokes’ pretrial deposition. Kellner measured the distance one or two days prior to the commencement of trial, at the request of his attorney. The proffered testimony challenged the accuracy of multiple measurements used by Stokes. Kellner testified that the true distance depicted in Stokes’ animations was “no less than a hundred feet.” Kellner claimed that he measured the accident scene and found a distance of 105 feet between the two points at issue in Stokes’ reconstruction. Following the proffer, the trial judge maintained her previous ruling concerning Kellner’s accident scene measurements.[4]
Standard of review
“Generally, rulings on evidentia-ry matters are within the sound discretion of the trial court.” LaMarr v. Lang, 796 So.2d 1208, 1209 (Fla. 5th DCA 2001) (citing Connell v. Guardianship of Connell, 476 So.2d 1381, 1382 (Fla. 1st DCA 1985)). “A trial court has wide discretion in determining the admissibility of evidence, and, absent an abuse of discretion, the trial court’s ruling on evidentiary matters will not be overturned.” Id. (citing Dale v. Ford Motor Co., 409 So.2d 232, 234 (Fla. 1st DCA 1982)). “When reviewing erroneous rulings on evidentiary matters, we examine the entire record to determine if the error is harmless.” Id.
I. Binger analysis of Kellner’s testimony
In Binger v. King Pest Control, 401 So.2d 1310, 1313-14 (Fla.1981), the supreme court provided guidance for analyzing a trial court’s exclusion of testimony that should have been disclosed pursuant to a pretrial order, as follows:
The goals underlying discovery practice are readily apparent in Florida Rules of Civil Procedure 1.200(c), which provides that a trial court’s pretrial order detailing the agreements made by the parties “shall control the subsequent course of the action unless modified at the trial to prevent injustice.” Consistent with this rule, we now hold that a pretrial order directing the parties to exchange the names of witnesses requires a listing or notification of all witnesses that the parties reasonably foresee will be called to testify, whether for substantive, corroborative, impeachment or rebuttal purposes. Obviously, a general reference to “any and all necessary” impeachment or rebuttal witnesses, as was the case here, constitutes inade *1047 quate disclosure. We expressly disapprove decisions ... which hold or imply that certain types of witnesses are automatically exempt from the dictates of a pretrial disclosure order.
It follows, of course, that a trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order. The discretion to do so must not be exercised blindly, however, and should be guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court’s exercise of discretion are: (i) the objecting party’s ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party’s possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.
401 So.2d at 1313-14. The Binger factors, although not exhaustive, generally support the lower court’s discretionary decision to exclude Kellner’s measurement testimony.
a. Appellees’ knowledge of Kellner as a witness and their ability to cure prejudice resulting from his testimony
The first Binger factor supports both Appellants’ and Appellees’ positions. Appellees should have been aware that Kellner, as the driver of a vehicle involved in the accident, would testify at trial. Conversely, Appellees’ ability to cure the prejudice was hampered because their expert had fully testified, had been released from his witness subpoena, and was excused from the trial.
Appellants argue that Kellner should have been allowed to testify because Appellees failed to demonstrate that his testimony would have prejudiced their case. Appellants’ reliance on Moore v. Gillett, 96 So.3d 933 (Fla. 2d DCA 2012), and Spalding v. Zatz, 70 So.3d 692 (Fla. 5th DCA 2011), is misplaced because these cases are dissimilar to the fact pattern at issue. The second district in Moore ruled that an expert’s alleged “surprise” testimony “was consistent with [the expert’s] prior report” and reversed the trial court’s decision to grant a new trial. Moore, 96 So.3d at 943, 947. In Spalding, the opposing party did not claim surprise by the non-noticed expert testimony and instead “attempted to capitalize” on the expert’s new testimony. Spalding, 70 So.3d at 699. The opposing party also earlier attempted to exclude the “surprise” testimony via an unsuccessful motion in limine. Id. at 698. Furthermore, prejudice in the context of Binger “refers to the surprise in fact of the objecting party, and is not dependent on the adverse nature of the testimony.” 401 So.2d at 1314. Kellner’s attempt to testify clearly resulted in “surprise in fact” sufficient to prejudice Appellees’ case.
b. Appellants’ possible intentional or bad faith noncompliance with the pretrial order
We have previously granted trial courts wide discretion in determining whether to admit the testimony of a witness or other evidence not disclosed pursu *1048 ant to a pretrial order. See Mistri v. Joseph Rutigliano & Sons, Inc., 827 So.2d 391, 392 (Fla. 5th DCA 2002) (affirming trial court’s exclusion of a document “of dubious authenticity” that was not produced in discovery or listed by the appellants as required by the court’s pretrial order). A party can claim surprise and a trial court may exclude witness testimony where that witness or testimony was not disclosed by the other party. Cascanet v. Allen, 83 So.3d 759, 763-64 (Fla. 5th DCA 2011) (citing Suarez-Burgos v. Morhaim, 745 So.2d 368, 370-72 (Fla. 4th DCA 1999)).
A trial court may admit witness testimony, despite late notice, if the opposing party has an opportunity to depose the witness about the new testimony and is not prejudiced by the new testimony itself. See Utica Mut. Ins. Co. v. Pa. Nat’l Mut. Cas. Ins. Co., 639 So.2d 41, 43 (Fla. 5th DCA 1994) (affirming trial court’s decision to allow additional expert testimony despite late notice where opposing party had the opportunity to depose the new expert the night before trial); Baker v. Mathew, 518 So.2d 290, 290-91 (Fla. 5th DCA 1987) (reversing trial court’s refusal to permit additions to the witness list where the addition was made six days after discovery cut-off but more than three months before trial).
Applying the second Binger factor to the present case supports the lower court’s exclusion of Kellner’s measurement testimony. Here, Appellants attempted to introduce measurements collected six months after discovery cut-off, one month after filing witness synopses, and one or two days before beginning the trial. Appellants provided no notice of Kellner’s expected testimony and no opportunity for Appellees to conduct meaningful discovery of his measurements.
Appellants’ concealment of Kellner’s measurements until he testified is concerning. Appellants engaged in a deliberate strategy of first disclosing and then withdrawing an accident reconstructionist who would have presumably testified about critical distances at the accident scene and calculations of the vehicles’ speeds. None of the documents Appellants filed with the lower court demonstrated Kellner’s intent to challenge Stokes’ measurements or calculations. Instead, Appellants furthered their strategy by directing Kellner, one or two days prior to the beginning of the trial, to take specific measurements for the purpose of directly challenging the accuracy of corresponding measurements taken by Appellees’ properly-disclosed and deposed expert. Appellants’ conduct is the type of “trial by ambush” addressed in Tetrault v. Fairchild, 799 So.2d 226, 229 (Fla. 5th DCA 2001) (Harris, J., concurring).
c. Possible disruption of the orderly and efficient trial of the case
Allowing Kellner’s testimony would have disrupted trial because the parties would have needed a recess from the trial proceedings to engage in further discovery, including a scene inspection and follow-up depositions. As a further inconvenience, Appellees would have needed an opportunity to recall their accident recon-structionist, which would have delayed trial.
Appellants rely principally upon Davis v. Pfund, 479 So.2d 230 (Fla. 3d DCA 1985), to suggest that a witness may return to the scene of an accident and take measurements after discovery cut-off. Davis is not applicable to the instant case. In Davis, the plaintiffs expert witness “returned to the scene of the accident and [took] certain measurements in order to clarify his original drawings.” Id. at 231. Furthermore, *1049 the expert witness-and his drawings were properly noticed and provided to opposing counsel prior to the close of discovery. Id. Here, Kellner was not an expert witness and was not “clarifying” his earlier deposition testimony. Furthermore, Kellner was not included in either of Appellants’ final witness lists, and Appellees had no notice of his intent to testify regarding the distance measurements. The testimony in this case established that Kellner acted at the request of his trial counsel in taking certain measurements, one or two days prior to the start of trial, to oppose the expert testimony from Appellees’ accident reconstructionist.
We conclude that Appellants failed to demonstrate an abuse of the lower court’s broad discretion conferred by Binger. Appellants’ serious violations of the pretrial disclosure rules support the lower court’s decision to exclude Kellner’s testimony. “Trial courts should not allow litigants to circumvent the rules by preparing [this type of evidence] at the last minute.” Thompson v. Wal-Mart Stores, Inc., 60 So.3d 440, 444 (Fla. 3d DCA2011). The potential prejudice from the testimony to Appellees’ case was clear. Appellees’ expert had finished testifying, and had been excused from trial. Allowing the testimony would have disrupted the trial and dis-served judicial economy. In light of our analysis, we affirm the lower court’s decision to exclude Kellner’s testimony about his accident scene measurements.
II. Loss of future earning capacity
We are persuaded by Appellants’ arguments and find that the record supports an award of only $390,000 in lost future earnings capacity as a result of this accident. The lower court’s original award of $420,000 in lost future earnings capacity resulted from calculation errors introduced in Appellees’ closing argument.[5] We remand for the trial court to enter judgment in the amount of $390,000 for loss of future earnings capacity.
We hold the lower court did not abuse its discretion when it excluded Kellner’s accident scene measurements. Appellants had ample opportunity to contest the measurements and calculations provided by Appellees’ expert, either through competing expert testimony or by properly noticing the lower court and Appellees of Kellner’s expected testimony. Instead, Appellants caused Kellner to take measurements shortly before trial and did not notify Appellees of those measurements until Kellner attempted to testify at trial. Accordingly, we affirm the lower court’s decision to exclude Kellner’s accident scene measurements and remand for the trial court to enter judgment in an appropriate amount for David’s loss of future earnings capacity.
AFFIRMED in part; REVERSED in part, and REMANDED with INSTRUCTIONS.
BERGER, J., concurs.
ORFINGER, J., concurs in part and dissents in part with opinion.

. On March 4, 2011, Bergerson filed a witness list, which included "[a]ll persons named by [Kellner].”

. Stokes earned a degree in engineering from the University of Florida, was accredited by the Accreditation Commission for Traffic Accident Reconstructionists, and was certified as a forensic consultant by the American College of Forensic Examiners. Stokes indicated that he had appeared as an expert witness in Florida courts about fifteen times. Appellants never challenged Stokes’ qualifications as an accident reconstructionist.

. Stokes estimated the distance between David's positions in two frames of the surveillance video footage as 75 feet. The two frames were taken one second apart. Most of Stokes’ calculations estimated a speed of between 43 and 47 miles per hour for David's motorcycle immediately before impact.

. In sustaining the objection, the trial court provided:
My ruling remains the same. Number one, any measurements that you elicited testimony were done two or three days ago. That's outside the discovery timeframe. You set him up as an expert, which there was no representation that he would do any kind of accident reconstruction or any kind of measurements. Not only was he — and I don't care that you didn't list him on the witness list, the letter that you sent in that you forgot to put your people on, but he’s not on there as indicating anything about measurements or reconstruction of the accident scene at all. You’ve known about Mr. Stokes for some time, and I would have assumed that you would have discussed that with your client so you could let the other side know there were going to be some issues with regard to that.

. During closing argument, Appellees’ counsel asked the jury to assume that David would work 52 weeks per year for another 15 years and would earn approximately $400 per week. Appellees’ counsel then incorrectly calculated David's lost earnings capacity as $420,000. However, properly applying their own counsel’s suggested assumptions results in a loss of future earnings capacity of only $312,000. Considering the evidence — including testimony that David earned $500 per week — in the light most favorable to Appel-lees, an award of up to $390,000 is appropriate.