NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FLORIDA PENINSULA INSURANCE        )
COMPANY,                            )
                                    )
      Appellant,                 )
                                    )
v.                                  )     Case No. 2D17-2519
                                    )
CATHERINE NEWLIN and ERIC NEWLIN,   )
                                    )
      Appellees.                 )
_____     )

Opinion filed June 12, 2019.

Appeal from the Circuit Court for Charlotte
County; Lisa S. Porter, Judge.

Scot E. Samis and Jonathan S. Tannen of
Traub Lieberman Straus & Shrewsberry
LLP, St. Petersburg; Fredric S. Zinober and
Michelle S. Sabin of Zinober Diana, P.A.,
St. Petersburg, for Appellant.

Mark A. Nation and Paul W. Pritchard of
The Nation Law Firm, Longwood; Matthew
R. Danahy and Howard W. Weber of
Danahy & Murray, P.A., Tampa, for
Appellees.

PER CURIAM

      Although Mr. Newlin's unexpected testimony at trial raises legitimate

concern, in considering the record, the arguments made by the parties, and the

applicable standard of review, we conclude that the trial court did not abuse its

discretion in allowing Mr. Newlin's testimony or denying the Appellants' motion for a new trial. See Cantore v. W. Boca Med. Ctr., Inc., 254 So. 3d 256, 260 (Fla. 2018) ("A trial court's admission of evidence is reviewed for an abuse of discretion."); Campbell v. Griffith, 971 So. 2d 232, 235 (Fla. 2d DCA 2008) ("The appropriate standard of review applied to a trial court's denial of a motion for a new trial is whether the trial court abused its discretion."); Pena v. Vectour of Fla., Inc., 30 So. 3d 691, 692 (Fla. 1st DCA 2010) ("Trial court rulings on motions for new trial are given great deference on appeal. The possibility of reasonable disagreement does not constitute an abuse of discretion." (citations omitted)).

Affirmed.


SILBERMAN, J., Concurs.
LUCAS, J., Concurs with separate opinion.
ATKINSON, J., Concurs with separate opinion.

LUCAS, Judge, Concurring separately with opinion.

Florida Peninsula Insurance Company (Florida Peninsula) has appealed the denial of its motion for new trial following an adverse verdict and judgment in a sinkhole coverage dispute. I agree that the circuit court did not abuse its discretion in denying Florida Peninsula's motion. Because my colleagues and I are traveling slightly different paths to resolve this appeal, and because the arguments on appeal touch upon an important vein of the law in civil litigation, I write this opinion to explain how I view these issues and why I feel an affirmance is appropriate here.

I.

In 2010, Catherine and Eric Newlin submitted a sinkhole claim to their insurer, Florida Peninsula, when they discovered cracking in the walls around the back of their home. After receiving an engineer's report which concluded that the cracking was not due to covered sinkhole activity under the Newlins' policy, Florida Peninsula denied the Newlins' claim. In 2014, the Newlins filed a lawsuit against Florida Peninsula, alleging their insurer breached their insurance contract by denying their claim. The litigation proceeded in a fairly uneventful fashion. Discovery was exchanged. Depositions were taken. Each side retained experts. Reports were prepared.

One point during discovery that is germane to the appeal before us bears mentioning. Near the conclusion of Mr. Newlin's deposition, Florida Peninsula's counsel asked Mr. Newlin about the property he owned adjacent to the home. Mr. Newlin testified he had owned the adjacent lot for "around ten years," and then he answered the following questions, which were the only questions he was asked concerning this property:

Q.     Do you have any plans to develop on the lot?

A.     It's already developed.  We did it last year.  We cleared it.  It's cleared and —

Q.     Ready to be built?

A.     We won't build a house on it.

Q.     Was there already a house on the property?

A.     No.

Q.     So when you say cleared it, were you just clearing it of vegetation?

A.     Cleared the vegetation and put a fence.

Q.     Does the fence include — I mean, is it inclusive of the home you're living now, so you're basically extending your yard?

A.     Yes.

       . . . .

Q.     Have you had the lot next door tested for sinkhole activity?

A.     Me personally, no.  I don't know who did anything, but, no, me personally, no.

Not long after Mr. Newlin's deposition, discovery concluded and the case went to trial.  Both sides agreed that the factual dispute for the jury to resolve was a narrow one.  They have reiterated the same point in this appeal: the Newlins' claim revolved entirely around whether there was limestone "rock" underneath the Newlins' home.  If there was, then the cracking in their house walls could be said to be the result of "sinkhole activity" as defined by section 627.706(2)(i), Florida Statutes (2010).  If there were no such rocks, then there would be no coverage under the applicable policy provision.

The Newlins and Florida Peninsula called expert geologists and engineers who, over the course of six days, endeavored to persuade the jury about what lies beneath the Newlins' home. We need not delve deep into the depths of the experts' dispute over whether the crumpled pieces of material their boring samples uncovered were truly limestone "rocks" or simply "sediment with limestone fragments." The appeal before us largely concerns what Mr. Newlin had to say on the matter.

Early in the trial, one of the Newlins' experts, Norton Nettles, had shown the jury a piece of Caloosahatchee marl, a kind of limestone rock, during his testimony as an example of what, in his opinion, the rock could look like beneath the foundation of the Newlins' house. Mr. Nettles admitted he had obtained the exemplar he was using from a mine pit approximately 3 to 4 miles away from the Newlins' home. However, when Mr. Newlin testified the next day, his attorney asked him if he had ever seen any rocks on his property like the one their expert had brought to trial. Mr. Newlin responded he had:

> I actually have seen rocks like that on my property, yes . . . .
> I'm — I'm kind of a country boy. Country boy always wants
> to have his own fish ponds so he can fish at home. I dug a
> pond on my — we own the adjoining property, and I dug a
> pond there.

Florida Peninsula's counsel promptly objected. Specifically, Florida Peninsula challenged the relevancy of Mr. Newlin's anticipated testimony and the fact that it was coming as a surprise (inasmuch as the plaintiffs had not previously disclosed that Mr. Newlin claimed to have ever found examples of limestone rock on his adjacent property). The circuit court overruled the objection and Mr. Newlin went on to explain how he had once dug a deep hole about 30 to 40 feet from his house and found the same kind of rocks his expert had been "talking about." He still had the rocks he had

- 5 -

dug up; Mr. Newlin said they were "in front of my home around one of the trees." Upon hearing this testimony, Florida Peninsula did not request a continuance of the trial, nor did it ask for a recess to depose Mr. Newlin on this aspect of his trial testimony. Instead, Florida Peninsula proceeded right into cross-examination of Mr. Newlin:

Q. [T]his business about you buying the lot next door and digging a hole, this is the first time you've ever said anything like that in any sort of court proceeding or to any expert or anything like that, correct?

A. Correct.

. . . .

Q. You never said anything to him [the neutral evaluator who had previously inspected the Newlins' house] about, "Let me show you this rock on my driveway," did you, or anything like that?

A. I never thought the relevance of it.

Q. Okay. But you never told — you never told Mr. Nettles about that either, I assume, correct?

A. Again, I didn't even know about — understand anything until I was sitting in the proceedings yesterday, when he was explaining this layer of rock that supposedly doesn't exist.

Q. So, again, this is the first time you've ever mentioned that to anybody, right?

A. Correct.

Florida Peninsula continued cross-examining Mr. Newlin about other aspects of his claim and testimony. When the court recessed for a lunch break, Florida Peninsula made a motion for mistrial, which the circuit court reserved ruling upon and eventually denied. After the parties rested their respective cases, the attorneys presented their closing statements which, not surprisingly, revolved largely around the various experts' conflicting conclusions. Mr. Newlin's testimony about the rocks he

- 6 -

claimed to have found was mentioned once by his attorney during an extensive closing statement; Florida Peninsula did not mention the point at all in its closing.

The jury returned a verdict in favor of the Newlins, and Florida Peninsula filed a motion for new trial. The circuit court denied Florida Peninsula's motion and entered a judgment based upon the jury's verdict. Florida Peninsula now appeals that judgment.

II.

Just as the factual dispute at the trial below was discrete, so too is the issue in this appeal. Did the circuit court abuse its discretion when it overruled Florida Peninsula's objection and allowed Mr. Newlin's unexpected testimony about the rocks he unearthed? Or, relatedly, did the circuit court abuse its discretion when it denied Florida Peninsula's motion for new trial?[1]

This court summarized the review we are supposed to undertake when considering an appeal from the denial of a motion for new trial in Campbell v. Griffith, 971 So. 2d 232, 235 (Fla. 2d DCA 2008):

> The appropriate standard of review applied to a trial court's denial of a motion for a new trial is whether the trial court abused its discretion. See Brown v. Estate of Stuckey, 749 So. 2d 490 (Fla. 1999). Brown articulates the test for determining whether the trial judge committed an abuse of discretion and provides that:
>
> [A]n appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of

---

[1]In its sole issue raised on appeal, Florida Peninsula argues that reversal is warranted under Binger v. King Pest Control, 401 So. 2d 1310 (Fla. 1981), and its progeny because of Mr. Newlin's aforementioned testimony and because of an unexpected use of a diagram by one of the Newlins' experts during trial. Florida Peninsula's argument about the effect of this diagram's use is without merit. In the interest of brevity, I have confined my analysis in this opinion to Mr. Newlin's testimony.

discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion.

In a similar vein, "[a] trial court's admission of evidence is reviewed for an abuse of discretion." Cantore v. W. Boca Med. Ctr., Inc., 254 So. 3d 256, 260 (Fla. 2018) (citing Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1265 (Fla. 2014)).

Although this appeal came to us as a review of discretionary decisions, the parties have framed their arguments almost entirely around the applicability of one case, Binger v. King Pest Control, 401 So. 2d 1310 (Fla. 1981). So it seems appropriate to begin the analysis there.

A.

In Binger, the plaintiffs in a personal injury action had exchanged a pretrial witness list pursuant to a court order, which included several named witnesses along with a generic reference to "any and all necessary" impeachment or rebuttal witnesses. Id. at 1311. A month before trial was scheduled to commence, King Pest Control, the defendant, amended its witness list to disclose the identity of an accident reconstruction expert it intended to call at trial. Id. The plaintiffs took the deposition of this expert four days before trial—and then, at trial, called their own, previously undisclosed expert to impeach the testimony of King Pest Control's expert. Id. Noting conflicting opinions regarding the extent of pretrial disclosure of witnesses' names, the Fourth District reversed the Bingers' judgment and ordered a new trial. Id.

The conflict the Fourth District described concerned the tension between "well-settled" law in Florida that impeachment witnesses need not be disclosed prior to trial and the goal of eliminating surprise and gamesmanship embodied in the rules of

- 8 -

civil procedure.[2]  Id. at 1311-12.  In settling that conflict, the Binger court affirmed the

Fourth District's decision to order a new trial and held:

> Consistent with this rule [Florida Rule of Civil Procedure 1.200(c)], we now hold that a pretrial order directing the parties to exchange the names of witnesses requires a listing or notification of all witnesses that the parties reasonably foresee will be called to testify, whether for substantive, corroborative, impeachment or rebuttal purposes.

Id. at 1312.  The Binger court went on to explain that "a trial court can properly exclude

the testimony of a witness whose name has not been disclosed in accordance with a

pretrial order," but cautioned that the presiding trial judge ought not to exercise that

discretion "blindly," but focus on the prejudice the use of the undisclosed witness would

visit upon the objecting party.  Id. at 1313-14.  In addition to prejudice, Binger identified

three other non-exclusive factors that may influence a trial court's discretionary decision

of whether to allow an undisclosed witness to testify: (i) the objecting party's ability to

cure the prejudice or that party's "independent knowledge of the existence of the

witness"; (ii) whether calling the undisclosed witness was intentional, in bad faith, or in

noncompliance with a pretrial order; and (iii) the possible disruption of the "orderly and

efficient trial of the case."  Id. at 1314.  If after considering these and any other relevant

factors, the trial judge concludes that the undisclosed witness would "not substantially

endanger the fairness of the proceeding," the witness should be allowed to testify.  Id.

Binger observed that "[r]equiring reasonable compliance with a pretrial

order directing witnesses' disclosure will help to eliminate surprise and avoid trial by

---

[2]In particular, the Binger court's holding focused on Florida Rule of Civil Procedure 1.200(c), which provides that a trial court's pretrial order "shall control the subsequent course of the action unless modified at the trial to prevent injustice."

'ambush.' " Id. However, the court took care to set some boundaries for its decision, which are well worth noting. First, Binger did not set forth a categorical rule. It did not hold that a trial court must preclude an undisclosed witness from testifying when the factors the court described are established; rather, it held that a trial court "can" exclude the testimony of such a witness. To emphasize that point, the court remarked that the "ultimate control over witness disclosure problems" would be left "to the broad discretion of the trial judge," id. at 1312, and then it assured the local judiciary that the court "intentionally left room for the operation of local rules and customs within the broad parameters" of its decision, id. at 1314. Second, Binger expressly limited its holding to cases in which unknown, undisclosed witnesses are called to testify at trial in violation of a pretrial order. Twice, the court emphasized that limitation:

> We do, however, limit our analysis to pretrial disclosure of witnesses. Although similar considerations may apply to the pretrial disclosure of nontestimonial evidence . . . we are not prepared to say that other considerations may not be relevant in these situations.
>
> . . . .
>
> Nothing in this concept of trial practice requires that one party disclose his case to the other in full. We are dealing only with an exchange of witnesses' names. It remains the obligation of each attorney to learn through interrogatories, depositions or any other means he selects, the nature of the testimony which will be offered and the extent to which he intends to meet or deal with it at trial.

Id. at 1312 n.5, 1313 n.7.

Now if the reader knew nothing else about Binger, he or she might pause here to wonder what the case at bar has to do with Binger and why the parties' arguments were so focused upon this holding. After all, Mr. Newlin was a party plaintiff and had been properly disclosed (and deposed) as a pretrial witness. Indeed, his is the

- 10 -

second name listed in the plaintiffs' witness list. The "failure" to disclose Mr. Newlin's recollection of finding rocks on an adjoining piece of property would not seem to implicate Binger whatsoever. Cf. Southstar Equity, LLC v. Chau, 998 So. 2d 625, 628-29 (Fla. 2d DCA 2008) (applying Binger and affirming trial court's exclusion of an unnamed, undisclosed defense witness who had been "discovered" on the evening of the seventh day of a premises liability trial).

The short answer to the reader's query is that the holding Binger announced (which spoke solely in terms of pretrial nondisclosure of witness names) as well as the explicit limiting admonitions the Binger court expressed in two separate parts of its opinion (that its holding was limited to situations where the name of a testifying witness had not been timely disclosed in violation of a pretrial order) have come to be thoroughly overlooked. The district courts of appeal have gradually extended Binger's holding beyond the limited circumstances the Binger court took the trouble—in multiple places—to express in its opinion. See, e.g., Doctors Co. v. Plummer, 210 So. 3d 711, 718 (Fla. 5th DCA 2017) (holding that trial court should have prohibited plaintiff's experts from testifying about an alternative cause of death in medical malpractice case that had not been pled and that had not been disclosed in discovery and observing that "[t]he Binger analysis has subsequently been applied to cases where an expert changes his or her opinion or givens a new opinion, which results in surprise and prejudice to the opposing party" (citing Perryman, M.D. v. Crawford, 968 So. 2d 83, 85-86 (Fla. 4th DCA 2007))); Kellner v. David, 140 So. 3d 1042, 1046, 1049 (Fla. 5th DCA 2014) (affirming exclusion of plaintiff's previously undisclosed testimony about measurements of an accident scene he had taken after discovery had concluded, and characterizing Binger as "guidance for analyzing a trial court's exclusion of testimony that should have been

disclosed pursuant to a pretrial order"); Clair v. Perry, 66 So. 3d 1078, 1080 (Fla. 4th DCA 2011) ("This court has held that 'allowing parties at trial to substantially change the essential import of pretrial testimony of any kind without prior disclosure in discovery' presents the same kind of 'surprise in fact' and should be analyzed using the same factors discussed in Binger." (quoting Menard v. Univ. Radiation Oncology Assocs., LLP, 976 So. 2d 69, 72 (Fla. 4th DCA 2008))); Dep't of Health and Rehab. Servs. v. J.B. by and through Spivak, 675 So. 2d 241, 244 (Fla. 4th DCA 1996) ("Although Binger dealt with the failure to disclose a witness, its principles have been applied where the presentation of a changed opinion is tantamount to permitting an undisclosed adverse witness to testify."); Smith v. Univ. Med. Ctr., Inc., 559 So. 2d 393, 396-97 (Fla. 1st DCA 1990) (reversing for new trial and remarking, "[t]he surprise introduction of the long-requested map during recross examination presented appellant with no opportunity to, in the words of Binger, 'cure the prejudice' " (quoting Binger, 401 So. 2d at 1314)).[3]

The justification for extending Binger beyond its stated limits appears to have originated from the Fourth District's case of Office Depot, Inc. v. Miller, 584 So. 2d 587 (Fla. 4th DCA 1991).  In Miller, the appellate court affirmed a trial court's decision to grant a new trial where the defendant's expert neurologist had "reversed his opinion" about causation of the plaintiff's disc herniation after he had already issued his report and been deposed.  Id. at 587-88.  The trial court noted that without "the surprise

---

[3]Perhaps the limits the Binger court tried to fashion were doomed by their placement within the Binger opinion.  They were tucked away in the footnotes.  Cf. Abner J. Mikva, Goodbye to Footnotes, 56 U. Colo. L. Rev. 647, 649 (1999) ("Many legalists insist that footnotes are part of the opinion and entitled to full faith and credit; others insist that they are just footnotes."); Mark E. Steiner, Without Precedent: Footnotes in Judicial Opinions, 12 App. Advoc. 3, 6 (1999) ("Things that are important appear in the text; things that are not important appear in footnotes.").

recantation" of this expert there would have been no evidence in the record to support the jury's defense verdict.  Id. at 589.  The Fourth District agreed and observed that Binger supported the trial court's decision to grant a new trial:

> We agree with the trial court that the spirit and purpose of Rule 1.360(b) requires the disclosure of a substantial reversal of opinion such as occurred here, if a party intends to offer that changed opinion at trial.  Parties who fail to make such disclosure do so at their peril, depending on the circumstances of the particular case.  *In this case, allowing the presentation of the changed opinion was tantamount to permitting an undisclosed adverse witness to testify* as in Binger.

Id. at 590-91 (emphasis added).

Certainly, there is an intuitive appeal to likening undisclosed or radically altered expert testimony to an undisclosed witness.  Expert discovery in civil litigation can be a highly technical and costly undertaking that necessarily entails extensive pretrial disclosure.  It is not uncommon for lawyers and their experts to expend substantial time and resources poring over an adverse expert's report, testimony, prior publications, and, in some cases, even prior testimony from other lawsuits in order to adequately prepare for that expert's anticipated trial testimony.  This kind of preparation is critical to effective advocacy when a case turns on a scientific or technical point.  To allow an adverse expert to sidestep an opponent's preparation for his or her trial testimony could indeed be "tantamount to permitting an undisclosed adverse witness to testify."  Id. at 591; see also Grau v. Branham, 626 So. 2d 1059, 1061 (Fla. 4th DCA 1993) (applying Binger factors and concluding that trial court abused its discretion in allowing changed testimony of two experts, observing that "once the trial starts . . . [n]either side should be required to engage in frantic discovery to avoid being prejudiced by the intentional tactics of the other party").

- 13 -

Our court appears to have followed the Fourth District up to this point. For example, in Semmer v. Johnson, 634 So. 2d 1123 (Fla. 2d DCA 1994), we held that a trial court should have granted a defendant's request for a continuance when a plaintiff and her expert were permitted to testify about additional lumps in the plaintiff's breast that she had found (after discovery had concluded) and that her testifying expert had confirmed (during trial). In so holding, we quoted the Fourth District's general pronouncement that "lawyers have a right to expect that once a trial commences, discovery and examinations must cease" and also included an unelaborated citation to Binger. Id. (quoting Grau, 626 So. 2d at 1061). Even here, though, we noted that "had the trial court afforded Semmer [the defendant] an opportunity to have his physician assess Cynthia's [the plaintiff] condition, or at least review the findings of Dr. Mandraccia's mid-trial examination, much of the prejudice occasioned by the surprise disclosure could have been avoided." Id. Our court has continued to cite Binger when considering the propriety of allowing or disallowing undisclosed expert testimony. See, e.g., Gaspar's Passage, LLC v. Race Trac Petroleum, Inc., 243 So. 3d 492, 502 (Fla. 2d DCA 2018) ("But because the discovery issue was never properly noticed and because the trial court failed to consider whether RaceTrac would be prejudiced by the addition of the witnesses or by an expedited deposition of its own expert witness, the trial court denied Gaspar due process and abused its discretion."); State Farm Mut. Auto Ins. Co. v. Thorne, 110 So. 3d 66, 71 (Fla. 2d DCA 2013) (concluding trial court abused its discretion in limiting testimony of expert witness after late-filing amended expert witness list because Appellant "met its burden to show that it fulfilled the requirements that Binger outlined to effectively mitigate the late-filed disclosure of [the expert] and thereby curing any prejudice [Appellee] might encounter"); Moore v. Gillett, 96 So. 3d

933, 942-43 (Fla. 2d DCA 2012) (citing Binger and reversing new trial order that had been based upon expert's testimony); Louisville Scrap Material Co., Inc. v. Petroleum Packers, Inc., 566 So. 2d 277, 278 (Fla. 2d DCA 1990) (determining trial court abused its discretion in excluding expert testimony of expert whose name was disclosed at pretrial conference because adverse party was not prejudiced as it was able to depose expert witness prior to trial, and noting that "this is not a case where a party was taken by surprise regarding witness testimony, at the time of trial, or was not aware of what would be the subject matter of the testimony prior to trial"). But our court has never expressly embraced the expansion of Binger on either of the vectors Florida Peninsula urges in this appeal: that is, we have never applied Binger's factors as a substantive test for the admissibility of evidence or for motions for new trial; nor have we ever held that Binger must be applied beyond the contexts of undisclosed witnesses or undisclosed expert testimony.[4]

I am not inclined to take that leap today. I explain why below.

B.

_____

[4]On one occasion, our court remarked that the Department of Transportation's use of an undisclosed, unauthenticated letter to "impeach" a landowner's testimony in an eminent domain action constituted "the ambush method of civil litigation" and included a citation to Binger. See Claussen v. State, Dep't of Transp., 750 So. 2d 79, 82 (Fla. 2d DCA 1999). The observation, along with the citation, could properly be construed as dicta since we had already concluded that the letter should not have been admitted as a matter of substantive evidence law. On another occasion, in a footnote, we cited Binger first in a string citation of cases for the following proposition: "The trial court refused to admit the checks on the grounds of authenticity and because the checks were not revealed at the pretrial conference. This evidentiary ruling was within the trial court's discretion." See Zaleznik v. Gulf Coast Roofing Co., Inc., 576 So. 2d 776, 778 n.1 (Fla. 2d DCA 1991).

Florida Peninsula maintains that Mr. Newlin's testimony was a "textbook Binger violation."  Which is a curious way of referring to Binger, since, again, Binger did not purport to set forth a categorical rule of admissibility that could be "violated."  But it must be allowed that a few courts have, on occasion, effectively treated surprise evidence in a civil trial as if its admissibility turned on Binger's application.  Thus, Florida Peninsula's argument that "undisclosed documents and witness testimony must be examined under the factors set forth in Binger to determine whether they are admissible" is not at all a specious one.  Some courts have seemingly construed the "Binger factors" as a legal test for admissibility instead of as non-exclusive guiding principles of discretion.  See, e.g., Allstate Prop. & Cas. Ins. Co. v. Lewis, 14 So. 3d 1230, 1233 (Fla. 1st DCA 2009) (identifying the Binger factors as "the test that trial courts should apply in determining whether undisclosed testimony should be excluded as prejudicial"); Menard, 976 So. 2d at 71-72, 75 (reversing judgment where medical provider's testifying doctor took a position contrary to that of the medical provider's corporate representative at deposition and observing that "allowing parties at trial to substantially change the essential import of pretrial testimony of any kind without prior disclosure in discovery slants the field of justice to give unfair advantage to the party making such a change"); Gouveia v. Phillips, 823 So. 2d 215, 222 (Fla. 4th DCA 2002) ("As Binger and the cases cited above make clear, the test for exclusion of evidence for non-disclosure during pretrial discovery is whether the opposing party was prejudiced in his preparations for trial.").

1.

Applying Binger as if it were an immutable rule of evidentiary admission, however, is problematic, both conceptually and pragmatically.  First, as covered in part

- 16 -

II(A), Binger did not announce a substantive evidentiary rule; it simply fashioned guiding questions for a trial court to consider when exercising its discretion when a party attempts to call a previously undisclosed witness. One cannot even glean the kind of forceful application Florida Peninsula urges from Binger's dicta. In the district courts of appeal, the only rationale that has ever been proffered for any extension of Binger has been to liken undisclosed testimony or evidence as "tantamount" to an undisclosed witness.[5] Florida Peninsula makes many claims in this appeal; but it does not go so far as to suggest that Mr. Newlin's suddenly remembered limestone rocks was the equivalent of not listing Mr. Newlin as a testifying witness.

Second, treating Binger like a de facto rule of evidence robs the trial court of the very discretion that Binger and Florida law have long affirmed. The decision to admit or exclude evidence is generally a discretionary one, subject to the established rules of evidence. See Kirkman v. State, 233 So. 3d 456, 467 (Fla. 2018) ("A trial court's determination that evidence is admissible will not be disturbed unless the trial court abused its discretion." (citing McGirth v. State, 48 So. 3d 777, 786 (Fla. 2010))); Ray v. State, 755 So. 2d 604, 610 (Fla. 2010) ("Admission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion." (citing Alston v. State, 732 So. 2d 148, 156 (Fla. 1998))); Hinojosa v.

---

[5]Again, our court has accepted that rationale in cases that involved undisclosed expert testimony. Even on its own terms, we should be cautious about any further extension on this basis because simply construing a different condition as "tantamount" to a preceding one, without elaboration, is an enterprise that invites no discernible limiting principle. It can also be a hard habit to break, as the Fourth District's case law, following its Miller decision, has perhaps illustrated. See., e.g., Menard, 976 So. 2d at 73 ("Obviously the testimony permitted in this case does not involve a change in an expert's opinion. But in some respects, it is even more significant because it involves historical fact: who said what; what did the parties agree.").

State, 857 So. 2d 308, 309 (Fla. 2d DCA 2003) ("A trial court has wide discretion in areas concerning the admissibility of evidence, and such rulings will not be disturbed absent an abuse of discretion." (citing Welty v. State, 402 So. 2d 1159, 1162-63 (Fla. 1981))).  When evidence is otherwise admissible but arguably undisclosed in violation of a pretrial order, the trial judge is faced with a decision concerning the enforcement of a pretrial order, which is also a discretionary judgment call.  See Gutierrez v. Vargas, 239 So. 3d 615, 622 (Fla. 2018) ("A trial court's enforcement of its own pretrial order is reviewed for abuse of discretion, and reversal is appropriate only when the affected party can clearly show the abuse resulted in unfair prejudice." (citing Binger, 401 So. 2d at 1313)).  On some occasions, the revelation of unanticipated or undisclosed evidence might merit a short continuance or a recess to allow an adverse party to depose a testifying witness or explore the substance of the new evidence, yet another exercise of judicial discretion.  See Fasig v. Fasig, 830 So. 2d 839, 842 (Fla. 2d DCA 2002) (observing that the standard of review for the denial of a motion for continuance is abuse of discretion and that "[t]o reverse the trial court's denial of a motion for continuance under normal circumstances, this court must find a 'clear showing of a palpable abuse of this judicial discretion' " (quoting Webb v. State, 433 So. 2d 496, 498 (Fla. 1983))).  What is left of a trial judge's "discretion" on any of these grounds if an appellate court is going to review, de novo, Binger's discretion-guiding factors as if they were a substantive rule of admissibility?  Cf. Olesky ex rel. Estate of Olesky v. Stapleton, 123 So. 3d 592, 594 (Fla. 2d DCA 2013) (explaining that a trial court's discretion to admit or exclude evidence is limited by the evidence code and applicable case law; "[a] court's erroneous interpretation of these authorities is subject to de novo review" (quoting Sottilaro v. Figueroa, 86 So. 3d 505, 507 (Fla. 2d DCA 2012))).  The

- 18 -

only answer that presents itself is one that distorts the notion of "discretion" into something so crimped it hardly resembles the word anymore.

Third, it is not at all uncommon for witnesses—sometimes even party litigants—to misremember, or expound upon, or forget, or invent, or embellish points and details that may have been covered in a prior deposition. A jury trial is hardly a scripted affair. In many instances where a witness has said something unexpected, cross-examination on that point will be adequate to keep the finder of fact properly oriented in the search for truth. As the Florida Supreme Court has observed, "the crucible of cross-examination is well-suited for gleaning meritorious from non-meritorious claims." Eppler v. Tarmac Am., Inc., 752 So. 2d 592, 595-96 (Fla. 2000); see also Burns v. Freund, 49 So. 2d 592, 595 (Fla. 1950) ("The purpose of the cross-examination is to test the truth of witness, to sift, modify, or explain what has been said, to develop new or old facts in a view favorable to the cross-examiner, or even to discredit the witness."); Granados v. Zehr, 979 So. 2d 1155, 1158 (Fla. 5th DCA 2008) ("[A]llegations of inconsistency, nondisclosure, and even falseness, are best resolved by allowing the parties to bring them to the jury's attention through cross-examination or impeachment . . . ."). Applying Binger as an evidentiary rule (rather than as a guide to discretion) relegates the "powerful instrument"[6] of cross-examination to an afterthought.

---

[6]See State v. Eddon, 36 P. 139, 142 (Wash. 1894) ("It is the experience of every court and every lawyer that cross-examination is the most powerful instrument known to the law in eliciting truth or in discovering error in statements made in chief, whether that error arise from mistaken judgment and careless observation and expression, or from a corrupt desire and intention to pervert the truth.").

Finally, I would note that treating a "<u>Binger</u> violation"[7] as a sept of admissibility in civil proceedings could conflict with Florida Rule of Civil Procedure 1.280(f), which states that "a party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired."  The <u>Binger</u> court reminded the Bench and Bar of this point: "There is no continuing duty of disclosure under Florida's Rules of Civil Procedure, as there is under our criminal rules."  <u>Binger</u>, 401 So. 2d at 1312 n.4.  It could also lead to a markedly different form of civil trial practice—one that calls into question the finality of trials.  <u>Fla. Power Corp. v. Garcia</u>, 780 So. 2d 34, 44 (Fla. 2001) ("The doctrine of decisional finality provides that there must be a 'terminal point in every proceeding both administrative and judicial, at which the parties and the public may rely on a decision as being final and dispositive of the rights and issues involved therein.' " (quoting <u>Austin Tupler Trucking, Inc. v. Hawkins</u>, 377 So. 2d 679, 681 (Fla. 1979))); <u>Moorman v. Am. Safety Equip.</u>, 594 So. 2d 795, 799 (Fla. 4th DCA 1992) (noting "the societal interest in furnishing only a single occasion for the trial of civil disputes").  To be sure, preventing "surprise, trickery, bluff, and legal gymnastics" is a laudable goal of civil discovery, <u>see</u> <u>Surf Drugs, Inc. v. Vermette</u>, 236 So. 2d 108, 111 (Fla. 1970), but we

---

[7]Florida Peninsula's term here (perhaps intentionally) alliterates to the "<u>Brady</u> violation" found in criminal law.  <u>See</u> <u>Brady v. Maryland</u>, 83 S.Ct. 1194, 1196-97 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").  Florida Rule of Criminal Procedure 3.220(b)(4), which imposes a duty on the part of the State to supplement material, exculpatory discovery to an accused defendant "was no doubt strongly influenced by the United States Supreme Court's decision in <u>Brady</u>." <u>See</u> <u>State v. Hall</u>, 509 So. 2d 1093, 1096 (Fla. 1987); <u>accord</u> <u>Binger</u>, 401 So. 2d at 1312 n. 4 ("There is no continuing duty of disclosure under Florida's Rules of Civil Procedure, as there is under our criminal rules.").

- 20 -

must take care not to confuse the stated purpose for civil discovery rules (to prevent surprises at trials) as if that goal were the very pronouncement of a substantive law (there shall be no surprises at trials). Otherwise, we may find a greater number of trials wind up as dress-rehearsals whenever a witness testifies "off script" from his or her deposition.

Shifting the focus to Florida Peninsula's motion for new trial amplifies these concerns. Because even if it could be said that Mr. Newlin's testimony was improperly admitted, the issue of whether improper evidence merits a new trial has long been held to be a decision uniquely suited to the presiding trial judge's discretion. See Van v. Schmidt, 122 So. 3d 243, 253 (Fla. 2013) ("Once the trial court fulfills its functions in evaluating the motion for a new trial, this Court has emphasized that the highly deferential abuse of discretion standard applies on appellate review, because of the trial court's favored vantage point." (citing E.R. Squibb & Sons, Inc. v. Farnes, 697 So. 2d 825, 826 (Fla. 1997))); Baptist Mem'l Hosp., Inc. v. Bell, 384 So. 2d 145, 146 (Fla. 1980) ("The trial judge is granted this discretionary power because it is impossible to establish a strict rule of law for every conceivable situation which could arise in the course of a trial."). That is so because these are matters that trial courts can consider from a far superior vantage than what a reviewing appellate court may perceive from a cold record.

## 2.

All of this is to say that the principles the trial courts must balance when undisclosed testimony comes before a jury are variable and highly contextual. They do not lend themselves to bright-line factorial resolution. If they did, the Binger court would not have needed to repeatedly emphasize the role of the trial court's discretion in

- 21 -

making these decisions. I write today because I am concerned with preserving discretion where discretion has been given. I am *not* suggesting that ambush tactics or trickery in the presentation of evidence should be countenanced in civil trials. That is a matter for the presiding trial judge to thoughtfully consider in his or her discretion. If, in the reasonable exercise of that discretion, the trial court determines that cross-examination of the unanticipated testimony remains a suitable tool to challenge the altered or unremembered testimony in a trial, an appellate court should be hesitant to second-guess that assessment. See Klose v. Coastal Emergency Servs. of Ft. Lauderdale, Inc., 673 So. 2d 81, 84 (Fla. 4th DCA 1996) ("[D]ecisions made by the trial court addressing the admissibility of evidence, the scope of examination of witnesses, or the appropriate subjects of inquiry in cross-examining witnesses are within the trial court's sound discretion."); S. End Imp. Group, Inc. By & Through Bank of N.Y. v. Mulliken, 602 So. 2d 1327, 1333 (Fla. 4th DCA 1992) (finding no error in trial court allowing expert to testify "given the broad discretion granted the trial court under Binger"); see also Health Options, Inc. v. Palmetto Pathology Servs., P.A., 983 So. 2d 608, 617 (Fla. 3d DCA 2008) (affirming trial court's denial of new trial, noting that "the trial court gave HOI the opportunity to cure whatever prejudice might have resulted from the [surprise] testimony"). If the presiding trial judge reasonably determines that a continuance will assuage the harm from undisclosed evidence, we should not cabin that discretion by mechanically applying factors from a discretionary test as if they were a rule of evidence.

Returning, then, to what was the analytic point of origin for Binger and its progeny, I can only review the reasonableness of the trial judge's discretionary decision in the case at bar. Having performed that review, I cannot say that no reasonable trial

- 22 -

judge would have allowed Mr. Newlin's testimony or that no reasonable jurist would have denied Florida Peninsula's motion for new trial, not on the record before us. My colleagues and I have no way of knowing how Mr. Newlin's testimony about finding rocks in a hole came across at trial, how it was perceived, what effect it could be said to have had on the jury. The trial court watched it happen. To the extent this testimony should have been disclosed before trial—a point I do not necessarily accept—the impact of its admission is one that only the presiding trial judge was in a position to gauge.[8]

### III.

In sum, I read <u>Binger</u> to have meant what it said: that "ultimate control over witness disclosure problems" is left "to the broad discretion of the trial judge."

_____

[8]If I were called upon to apply <u>Binger</u>'s factors as decisive of the appeal before us, I would still affirm the judgment below. In a case that both parties have described as a "battle of experts" concerning the technical composition of soil underneath a house, the "prejudice" of Mr. Newlin stating he once found some rocks like the one his expert had been showing when he dug a pit on an adjoining property rests on the assumption that the persuasive force of Mr. Newlin's testimony was powerful indeed (an assessment which, of course, we cannot make on this record). Florida Peninsula's counsel did not request a continuance or a recess after hearing Mr. Newlin's unearthed limestone rock testimony, from which one could reasonably infer that it was a point Florida Peninsula anticipated being able to sufficiently rebut through cross-examination. As to the second factor, Florida Peninsula's ability to cure its purported prejudice or its independent knowledge of this evidence, I would point out that Mr. Newlin was never asked in his deposition or in an interrogatory about what connection, if any, his adjoining land had to his coverage claim. That is a simple question and, had it been asked, would have pertained directly to the subject of his "surprise" testimony. <u>Cf.</u> <u>Binger</u>, 401 So. 2d at 1313 n.7 ("Nothing in this concept of trial practice requires that one party disclose his case to the other in full. It remains the obligation of each attorney to learn through interrogatories, depositions or any other means he selects, the nature of the testimony which will be offered and the extent to which he intends to meet or deal with it at trial."). Third, there has been no argument that Mr. Newlin's testimony was an intentional breach of the trial court's pretrial order or that it came about from bad faith. And finally, there is no argument that Mr. Newlin's testimony disrupted the orderly and efficient trial of the case, which, again, Florida Peninsula did not ask to continue once the testimony was elicited.

- 23 -

Binger, 401 So. 2d at 1312. Neither Binger nor any case from our court construing Binger has purported to supplant the role of discretion that underlies the inquiry of what to do when surprise testimony arises in a civil trial. Thus, the Binger holding is not a mechanical, four-part test that *mandates* exclusion of previously undisclosed evidence or a new trial whenever that evidence is presented to a jury. That is not how discretion works.

The law vests our colleagues in the circuit and county courts with broad discretion to prevent "evidentiary ambushes" in trials, and mitigate the harm if they occur. The role of our court is to review—not substitute our judgment for—these kind of discretionary decisions. Cf. Cloud v. Fallis, 110 So. 2d 669, 673 (Fla. 1959) (explaining the scope of appellate review regarding a motion for new trial, noting "[i]nasmuch as such motions are granted in the exercise of a sound, broad discretion the ruling should not be disturbed in the absence of a clear showing that it has been abused"); Kelley v. Schmidt, 613 So. 2d 918, 922 (Fla. 5th DCA 1993) (Goshorn, C.J., dissenting) ("We, as appellate judges, should not look at the cold record and substitute our subjective opinions of what we might have done if we were the trial judge, for the opinions of the judge who has an obligation to adjudicate the cases on his or her docket in an orderly and timely manner."). For that reason, I believe affirmance is appropriate.


ATKINSON, Judge, Concurring separately with opinion.

I concur with our majority opinion but write separately because I would not foreclose the possibility that the Binger analysis could be applied "beyond the contexts

of undisclosed witnesses or undisclosed expert testimony."  See Lucas, J., concurring, supra Section II.A.  This court has already expanded the application of Binger beyond its original context of undisclosed expert witnesses.  See Moore, 96 So. 3d at 941–43 (applying the Binger analysis to new opinion testimony from a disclosed expert witness); Semmer, 634 So. 2d at 1123–24 (citing Binger and holding that the trial court erred in allowing introduction of undisclosed testimony from a disclosed expert witness without granting a continuance).  And other courts have already applied Binger to surprise fact witness testimony and surprise nontestimonial evidence under circumstances that are tantamount to the surprise at issue in Binger—the calling of an undisclosed expert witness at trial.  See, e.g., Menard, 976 So. 2d at 74 ("We see no reason why the requirement of pretrial disclosure for a change in testimony should be any different for historical fact witnesses."); Smith, 559 So. 2d at 396–97 (applying Binger to the surprise introduction of a map).

Withheld testimony, opinion or fact, in the face of a requirement that it should have been disclosed prior to trial is tantamount to the problem addressed by Binger.  Cf. Dep't of Health & Rehab. Servs. v. J.B., 675 So. 2d 241, 244 (Fla. 4th DCA 1996) ("Although Binger dealt with the failure to disclose a witness, its principles have been applied where the presentation of a changed opinion is tantamount to permitting an undisclosed adverse witness to testify."); Menard, 976 So. 2d at 73 ("[I]n some respects" a change in "historical fact" testimony "is even more significant" than "a change in an expert's opinion": "It is conceivable that, given new information, an expert may honestly change an opinion.  But historical fact is not—or should not be—mutable in that way.").

Judge Lucas expresses understandable concern that if this court should explicitly extend, "without elaboration," application of Binger from undisclosed expert testimony to other types of surprise testimony under the rationale that the latter are "tantamount" to the former, we would be guided by no limiting principle. However, such an extension need not be without explanation or limiting principle if a reviewing court asks the following question: To what in Binger is the surprise in this case tantamount?

Under Binger, "a trial judge's discretion in determining whether an unlisted witness can testify should be guided primarily by whether" the objecting party would suffer "prejudice," described to mean that "the objecting party might well have taken some action to protect himself had he timely notice." Binger, 401 So. 2d at 1311 (quoting King Pest Control v. Binger, 379 So. 2d 660, 663 (Fla 4th DCA 1980)). Thus, if there was nothing of which the objecting party could have been notified, then there was no prejudice that the Binger analysis was intended to prevent. See id. at 1312 ("leav[ing] ultimate control over witness disclosure problems to the broad discretion of the trial judge and focus[ing] on prejudice in the preparation and trial of a lawsuit"). That is true of this case, where nothing indicates the plaintiff, much less his lawyers, was cognizant of the relevance of the rock he had discovered under his adjacent property until the proverbial light went on in his head during trial. In other words, if the nonobjecting party could not have done anything about the surprise ahead of time—if they did not fail to disclose something they should have, whether, e.g., in compliance with a pretrial order or in response to a discovery request—then it is not the type of surprise to which the Binger analysis applies. Cf. id. at 1314 ("Since the Bingers knew the name of King Pest Control's expert witness and the substance of his testimony approximately four days before the trial, they knew or reasonably might have known that

that they would call their own expert as a witness. They knew, of course, who he was and what he would say." (emphasis added)); Doctors Co., 210 So. 3d at 717–18 (finding surprise testimony inadmissible under Binger where, "[p]rior to trial," the party "failed to disclose" her "intent to present" the testimony) (emphasis added); Kellner v. David, 140 So. 3d 1042, 1046, 1049 (Fla. 5th DCA 2014) (affirming exclusion of plaintiff's previously undisclosed testimony about measurements of an accident scene he had taken after discovery had concluded).

The Binger court limited "reviewing courts to reversals only in cases of a clear showing of abuse prejudicial to the affected parties." Binger, 401 So. 2d at 1313. Here, the surprise testimony did not cause prejudice as it was defined in Binger— elimination of the objecting party's opportunity to take "some action to protect himself" from the evidence of which he had no "timely notice"—because there was nothing of which plaintiff or plaintiff's counsel could have put the defendant on notice until such time as it was revealed at trial. See id. at 1311 (quoting Binger, 379 So. 2d at 663). There was no testimony given during discovery that was contradicted by the testimony sought to be excluded at trial. Indeed, there was nothing to indicate that plaintiff or plaintiff's counsel understood that the plaintiff had pertinent knowledge of the condition of subsurface soil within a relevant proximity to the insured house. There was no change in "the essential import of pretrial testimony . . . without prior disclosure in discovery," because the plaintiff had not previously testified about his knowledge of what was under his property during discovery. See Menard, 976 So. 2d at 72. And there was no discovery request that should have elicited a truthful response from plaintiff regarding whether he had ever uncovered rocks under his adjacent property.

This is not to say defense counsel was deficient in questioning the plaintiff during deposition. After all, there was extensive expert testimony adduced on both sides of the central debate over whether what was under the plaintiff's house was the same as what was under the exemplar property approximately three to four miles away. As such, it would not be intuitive to suspect that, all this time, the plaintiff himself had intimate knowledge of the type of soil directly under his own property. However, just because it was surprising to hear at trial that the plaintiff did know something about what was under his property does not mean the situation was tantamount to what the holding in Binger aimed to prevent. See, e.g., Clair, 66 So. 3d at 1080 ("This court has held that 'allowing parties at trial to substantially change the essential import of pretrial testimony of any kind without prior disclosure in discovery' presents the same kind of 'surprise in fact' and should be analyzed using the same factors discussed in Binger." (quoting Menard, 976 So. 2d at 72)); cf. Menard, 976 So. 2d at 74 n.3 (limiting its holding by explaining it would not apply to "a bona fide change by a fact witness as to past memory" such as "having one's memory honestly refreshed" or "a real gap in memory later filled by spontaneous recollection").

Binger did not set forth a rule to eliminate any and all surprise during trial. Rather, Binger addressed preventable surprise—the type of surprise that could have been avoided by the party who stands to benefit from it. See Menard, 976 So. 2d at 74 (lamenting that the "orderly use of discovery by [one party] to discover the other party's case came to nothing" when the other party was allowed "to wait until after trial started to change a key piece of evidence"); Grau v. Branham, 626 So. 2d 1059, 1061 (Fla. 4th DCA 1993) (applying Binger factors to changed testimony of two experts and observing that "once the trial starts . . . [n]either side should be required to engage in frantic

- 28 -

discovery to avoid being prejudiced by the intentional tactics of the other party").

Despite the dramatic nature of plaintiff's surprise testimony and its potentially deleterious effect on the defendant's case, there is nothing in the record to indicate that it could have been prevented.