PER CURIAM.
Appellant seeks review of a final judgment entered pursuant to a jury verdict by which appellant was awarded no damages in his premises liability action against ap-pellee and codefendant Service Masters Industries, Inc., pursuant to a $30,000 setoff resulting from a settlement with Service Masters that was applied against the jury verdict of $24,300. The jury awarded total damages of $81,000 but found appellant 70% negligent and appellee hospital 30% negligent. We find the trial court erred in denying appellant’s motions for mistrial and new trial based on appellee’s failure to disclose the existence of certain evidence, and reverse on that ground, mooting other issues raised on appeal and cross-appeal.
Appellant, a security guard employed at Globe Security, Inc., which had contracted with appellee hospital to provide security guard services filed a negligence complaint on December 16, 1985 against appellee and Service Master Industries, Inc., which had contracted with the hospital to supervise hospital personnel in the performance of maintenance services. Service Master settled with appellant for $30,000 and is not a party to this appeal. Appellant alleged that on or about October 25, 1983 he slipped and fell on a floor covered by wet wax in a corridor on the premises of the hospital, causing him to sustain serious permanent injury. Evidence indicated that the appellant was injured as he was patrolling a portion of the hospital’s second floor and came upon an area that appeared to have been waxed “wall to wall.” Appellant stated he found a hospital employee who led him through the waxed area until they came to a cross hall. At this point appellant testified that the hospital employee indicated that appellant should step across the dry area to another dry area. When appellant stepped to that area of the floor, the wax was wet and he slipped, falling on his tailbone. The hospital defended on grounds that appellant’s own negligence was the proximate cause of his injuries. At trial the hospital con^nded that appellant should have known that the area where he fell was waxed' wall to wall because he had prepared a map using the floor plan of the hospital to show which areas should be waxed wall to wall and which should be waxed in a crisscross pattern. Deposition testimony of a former employee at the security company and appellant’s then supervisor, Mary Lannette Hall, indicated that the map was prepared by appellant as part of his duties and that it was in effect at the time of the fall. Irene Smith, head of housekeeping at the hospital, apparently also testified that appellant had prepared a map, and that it was in effect at the time of the fall. Appellant stated that he did not prepare a map until after his fall, and he recalled preparing the map while he was on convalescent leave from his injury.
On February 17, 1987 Service Master submitted to appellee a request to produce, requesting all documents, papers, records, etc. pertaining to housekeeping procedures in effect on October 25, 1983. In response to the September 3, 1987 deposition of Mary Lannette Hall, on September 8, 1987 appellant’s counsel submitted to appellee a notice to produce, requesting:
*395 1. The map alleged to have been prepared by plaintiff and housekeeping personnel for the purpose of determining what areas of the subject premises were to be waxed wall to wall and what areas were to be waxed half wall at a time, as referred to in the deposition of Mary Lannette Hall taken on September 3, 1987.
The hospital responded to both requests with a map that it determined had been prepared by appellant and housekeeping personnel, and was in effect at the time of the accident. Appellant asserted at trial that nothing was attached to appellee’s response, and the attachment that the hospital intended to attach was a different document than that requested. The deposition testimony of Mary Lannette Hall indicated that appellant had prepared a draft map that she altered by color-coding some areas, and that a different final version of the map was prepared by housekeeping personnel, displayed throughout the hospital at various locations, and was in effect at the time of appellant’s injury.
The trial court’s May 15, 1987 order setting trial and pretrial conference required the parties to display to the opposing parties all documents intended to be used at trial. During recross examination of appellant by appellee’s counsel, appellee showed appellant a map which was alleged to have been prepared by him, and appellant began to testify from the map, stating that some of the markings on the map were not his, before appellant’s counsel was able to object. Appellant’s counsel strenuously objected during a side bar conference to ap-pellee’s use of the map on grounds that appellee had failed to produce the map prior to trial for appellant or Service Master, despite repeated requests by appellant for the map. Appellee voluntarily withdrew the map at that time. Appellant’s counsel moved for a mistrial at that time and later when additional testimony concerning the map was elicited. The trial court denied the motions for mistrial.
The jury returned a verdict in favor of appellant, finding total damages of $81,000 but determining that he was 70% negligent and the hospital was 30% negligent, subject to setoff above noted. Following trial appellant filed a motion for new trial and/or judgment notwithstanding the verdict, and a motion for sanctions. The court denied the motions for sanctions and for judgment notwithstanding the verdict after a hearing. The court denied appellant’s motion for a new trial without hearing.
We conclude that the trial court erred in denying appellant’s motion for a mistrial and new trial based upon appellee’s failure to disclose the existence of the specified housekeeping map of University Medical Center. In Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), the court sets out a four part test to guide the discretion of the trial judge in determining whether a new trial is required:
The discretion to do so ... should be guided largely by a determination as to ... prejudice [of] the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent upon the adverse nature of the testimony. Other factors which may enter into the trial court’s exercise of discretion are: (i) the objecting party’s ability to cure the prejudice ...; (ii) the calling party’s possible ... bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case....
Ibid, at 1314. Applying these criteria and the supreme court’s rationale in to the facts at hand, we conclude that the defendant disregarded his obligation to comply with discovery. In addition to his failure to disclose the housekeeping map at issue after several discovery requests, the defendant did not comply with the pretrial order requiring: “[Attorneys for each party shall meet together ... to ... examine all exhibits and documents which may be used at trial_” (e.s.) The record also discloses that defense counsel had the map with him at pretrial conference and did not show it to appellant’s counsel, reasoning “we did not plan to use it as an exhibit at trial.” Moreover, this is not a case in which appellee’s counsel was under no continuing duty to disclose. Counsel stated that he first discovered the map displayed *396 to plaintiff at trial in October 1987. The pretrial order, however, directed him to make available to opposing counsel seven days before pretrial conference all exhibits and documents to be used at trial, and the pretrial conference was set for November 30, 1987. Thus, defense counsel had discovered the map more than seven days before pretrial conference, had the map with him at conference, yet failed to disclose such fact at that time.
It is also clear from the record that appellant’s counsel was surprised in fact by the use of the map at trial during cross-examination of the plaintiff. This surprise is evidenced by his reaction the moment the map was used at trial:
RECROSS EXAMINATION
BY MR. HESSION [defense counsel]
Q. Mr. Smith, let me show you a document. Are those your recommendations as far as the housekeeping, clearing is concerned?
A. The green is not mine.
BY MR. DAVIS: Your Honor, could we have a sidebar?
There immediately followed an extensive sidebar conference, during which Mr. Davis strenuously objected to the use of this map stating: “And now they are attempting to surprise me with something I haven’t even seen before and that they’ve denied ever giving it to me.”
The surprise introduction of the long-requested map during recross examination presented appellant with no opportunity to, in the words of Binger, “cure the prejudice. ” Binger, 401 So.2d at 1314 (e.s.) Although the entire trial record has not been transmitted to us, not having been designated in full, nevertheless apparently Irene Smith, head of housekeeping with Service Master, testified that appellant had prepared the map, and that it was in effect at the time of his fall.[1] Appellant testified that he did not prepare a map until after his fall. The record also discloses that there was animosity between appellant and Smith.
A close reading of the testimony indicates that plaintiff’s counsel wished to have the map in his possession prior to trial in order to depose Smith regarding the map which she testified existed at the time of the fall, and to depose another witness, Mary Lannette Hall, who also testified that the map was in effect at the time of plaintiff’s fall. Appellant’s counsel was deprived of this opportunity to adequately prepare his case before trial, and meet and contradict the evidence of these two witnesses. That appellant’s counsel was deprived of this opportunity is underscored by his and defense counsel’s opening remarks. During opening remarks, plaintiff’s counsel admitted:
Now, on this little cross hall, they waxed wall to wall, and I don’t know the sequence of which was wax and which was not. In fact, nobody seems to know, but basically these halls were not up there. The man [employee of hospital] led Chester through his maze of wax, and they went up here to cross the hall, and he’ll tell you more exactly, but he got down here and right in this area here. The man said put your foot here, this part's dry, and Chester did. And his foot went out from under him.
Appellant’s counsel, still in opening argument, said: “The fall happened on apparently a wall-to-wall waxed area which was supposed to be a violation of the procedures that the hospital had.” (e.s.) Defense counsel, during opening argument, said:
Well, in order to effectuate this whole thing, there is something that you will hear about and see and it will be talked about, it will be this great map, and the testimony about this map and what it is, it’s a blueprint of the hospital, and it says how you wax the floors in which different sections of the hospital. The *397 testimony will be from everyone but Mr. Smith that this map is a housekeeping map designating the areas that the wax was to, be done and how it was to be done, whether it was wall to wall or leaving a pathway down, was in fact authored by Mr. Smith, was in full force and effect before the accident. Now, Irene Smith will testify about that, it was in force and effect before Mr. Smith. And also there will be a lady that will testify by the name of Linette [sic] Hall, and she’ll also testify that Mr. Smith was the author and ‘principal contributor to how this was to be done, (e.s.)
In Binger, because the court found these three factors to be present — “intentional nondisclosure, combined with the surprise and disruption occasioned by the use ... and inability to alleviate these problems,” Id. at 1314-15 — the court reasoned that a new trial was required. Applying this reasoning to the present case, the trial court’s decision to deny a new trial, despite intentional nondisclosure, surprise in fact, and inability to cure, is reversed.
ERVIN and WENTWORTH, JJ., concur.
BOOTH, J., dissents.

. We use the word “apparently” because Irene Smith's testimony is not included in the abbreviated record on appeal. We do have, however, the deposition testimony of Mary Lannette Hall, which is part of the record, who did so testify. Ms. Hall also stated that after she added color codes to the map, she gave the map to Irene Smith, supervisor for the housekeeping department of Service Master.