RAMIREZ, C.J.
Sabrina Thompson appeals the denial of her motion for a new trial based on: the unreliability of an expert witness’ testimony and use of an undisclosed PowerPoint slide presentation; and the improper admission of Thompson’s prior convictions. We affirm the admission of Thompson’s prior convictions, but reverse and remand for a new trial, because the trial court abused its discretion when it allowed the introduction into evidence of the testimony of the expert witness who changed his testimony and presented PowerPoint slides at trial without prior notice to Thompson.
Thompson slipped and fell in a “puddle of yellowish-green liquid in a housewares aisle at Wal-Mart in Daytona Beach.” There were no warning signs or cones in the area, and Thompson did not see the liquid before she fell. An eye witness saw the liquid and witnessed her fall. A jury found Wal-Mart 100% at fault for the fall, but awarded only minimal damages. Thompson had previously fractured her wrist in 1994 for which she received treatment. Due to her previous injury, Thompson’s ulna was slightly longer than her radius.
About ten days after the fall, she saw Dr. Stephen Wender. Thompson told Dr. Wender that she had “severe pain in her wrist with numbness and tingling in her thumb, index finger and long finger.” Dr. Wender diagnosed Thompson with a tear of the triangular fibrocartilage complex (hereinafter “TFCC”) and carpal tunnel syndrome. After conservative treatment, Dr. Wender referred Thompson to Dr. Jay Dennis, Chief of Hand Surgery at the University of Miami School of Medicine.
Dr. Dennis reviewed Thompson’s medical records and conducted an examination. He concluded that she had suffered an injury that was both recent and acute. He diagnosed Thompson with a TFCC tear and carpal tunnel syndrome. Dr. Dennis also treated her conservatively for two months, and he did not find any changes in her condition.
Five months after the fall, in January 2007, Dr. Dennis performed arthroscopic surgery and a carpal tunnel release. Dr. Dennis believed the surgery showed an unreconstructable tear of the TFCC, and described it as a “trampoline with a hole in the middle” with no possibility of repair. At the same time, Dr. Dennis performed an ulnar shortening osteotomy, in which he broke the ulnar bone and shortened it to bring it down to a level even with the radius. According to Dr. Dennis, the procedure “is one of the salvage reconstruction options for an irreparable, non-recon-struetable, non-fixable TFCC.” The carpal tunnel release performed at that time also involved breaking the bone and inserting a plate which later had to be removed, leaving holes in the bone, which are points of weakness in the wrist. Dr; Dennis had to *442 operate a third time, after a screw hole left from the plate caused a new displaced fracture in Thompson’s wrist. Dr. Dennis estimated that Thompson sustained a seven percent permanent impairment. He opined that the fall at Wal-Mart had caused a significant portion of her injury, and exacerbated her wrist condition and brought on all of her symptoms. He believed that as a result of the fall, Thompson required the three surgeries she received. He also stated that the fall also probably aggravated or exacerbated her carpal tunnel syndrome.
The pretrial order required the parties to provide opposing counsel, no later than sixty days before trial, “the names and addresses of all expert witnesses to be called at trial and all information regarding expert testimony (including treating physicians, if any, that is required by rule 1.280(4)(A)).” Wal-Mart filed its first witness and exhibit list in February of 2009, and at that time disclosed that it would call Dr. Felix Freshwater as an expert witness, and provided his address at the Miami Institute of Hand and Microsurgery. In its Disclosure of Experts, Wal-Mart also listed Dr. Freshwater as an expert in hand surgery. Wal-Mart filed a second witness and exhibit list in April of 2009 and gave no additional information.
Thompson’s counsel took Dr. Freshwater’s deposition in March of 2009. Dr. Freshwater never examined Thompson. He based his testimony on a review of medical records and on Dr. Dennis’ deposition. He testified that he had not seen her x-rays, but had reviewed the x-ray reports. He also testified that he could not determine within a reasonable degree whether the tear occurred prior to, or after her fall, or whether the injury was degenerative or traumatic in nature, only that the injury was not as a result of the fall at Wal-Mart. Dr. Freshwater further testified that the MRI taken of plaintiffs .wrist was practically useless, and that he “couldn’t see anything on the MRI about the TFCC tear that the radiologist alluded to.” He also testified that he was only able to measure the amount of the ulnar variance on the MRI, but that it was not a very good study. Dr. Freshwater believed that the procedures performed by Dr. Dennis were unnecessary, except the arthroscopy. After this statement, he terminated the deposition.
On May 8, 2009, Thompson moved to strike Dr. Freshwater on the grounds that his opinion was speculative and based on insufficient data because he was unable to read the MRI, had not personally examined Thompson, and had not reviewed the x-ray films. At the hearing on the motion, defense counsel stated that Dr. Freshwater would testify as to the surgeries being “overkill” and unnecessary, and that the tear could, have occurred before or after the fall but that he did not believe (“within a reasonable degree of medical probability or certainty”) that the fall caused the injury. The trial court denied Thompson’s motion to exclude or limit Dr. Freshwater’s testimony.
The night before the last day of trial, Thompson received a forty-five slide PowerPoint presentation titled “Understanding Wrist Fractures” that Dr. Freshwater was going to use to testify. Thompson objected to Dr. Freshwaters’ testimony, arguing that there would be no time for her own experts to evaluate them. The court overruled the objection.
Dr. Freshwater testified that using the MRI, he was able to tell that the end of Thompson’s radius had collapsed, which gave her a negative volar angle or tilt of twenty-one degrees; a normal volar angle being at eleven degrees, and he would be able to tell that there was a collapse of ten degrees the other way. Dr. Freshwater *443 testified that the load on Thompson’s wrist increased to forty-three percent. He also testified that the MRI showed no “white area,” which indicated that there was a recent injury to the wrist. He stated that the cause of the wrist problem was degeneration, and this resulted from her wrist fracture in 1994. Dr. Freshwater stated that he based this opinion partly on the emergency medical records because Thompson did not complain in the emergency room of having any swelling, bruising, oozing or pain in her wrist, as he would expect from a TFCC injury. Also, the records from the North Dade Center where Thompson had a follow-up medical visit days after the fall did not indicate that she had any complaints or pain.
Dr. Freshwater conceded that he changed his opinion as to whether all of the surgeries Dr. Dennis performed were unnecessary, including the arthroscopy which in his deposition he stated was appropriate. Thompson cross examined Dr. Freshwater on his changed opinion but did not present any rebuttal testimony.
The jury returned a verdict for Thompson, awarding damages in the amount of $7,041.44 for the ambulance, hospital emergency room and MRI. There was no award for treatment by Dr. Wender or Dr. Dennis, or for pain and suffering.
We conclude that the trial court abused its discretion when it allowed Dr. Freshwater’s surprise testimony and his PowerPoint slides, neither of which had been disclosed to Thompson prior to the last day of trial. The trial court should not have allowed Dr. Freshwater to testify that Ms. Thompson’s wrist problem was caused by degeneration from her 1994 fracture when, before trial, he testified that it was impossible to determine the cause, except that it was not caused by the fall at Wal-Mart. In addition, the trial court should not have allowed Dr. Freshwater to present calculations at trial based on measurements he said in deposition he was unable to take because of the poor quality of the MRI. Throughout the entire pre-trial proceedings, Wal-Mart never disclosed Dr. Freshwater’s opinion that the wrist problem was degenerative, caused by the 1994 fracture.
Furthermore, the pretrial order required disclosure of all expert information required by Florida Rule of Civil Procedure 1.280(4)(A). Wal-Mart did not disclose the opinion it in its witness lists. Wal-Mart did not disclose it in its expert witness disclosures. Dr. Freshwater did not disclose it in his deposition. Wal-Mart did not disclose it in the proffer its counsel made to the court at the hearing three weeks before trial. In fact, the proffer consisted of Wal-Mart’s counsel reading verbatim several pages from Dr. Freshwater’s deposition, and representing to the court and Thompson that what Dr. Freshwater said in his deposition was what he was going to say at trial: that he could not say what caused the TFCC tear, or whether it occurred before or after her fall at Wal-Mart.
Thirty years ago, the Florida Supreme Court stated in no uncertain terms that courts in Florida would not condone trial by ambush. See Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981). In Binger, the court established the policy of this State which is to promote full and open disclosure in discovery and pretrial procedure, and it stated that “[t]he goals of [the] procedural rules is ‘to eliminate surprise, to encourage settlement, and to assist in arriving at the truth.’ ” Id. at 1313. Although the trial court has discretion to exclude a witness, the court explained:
The discretion to do so must not be exercised blindly, however, and should be guided largely by a determination as to whether use of the undisclosed wit *444 ness will prejudice the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court’s exercise of discretion are: (i) the objecting party’s ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party’s possible intentional, or bad faith, noneompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases).
Id. at 1314.
We have previously condemned the practice of allowing experts to develop or change their opinion during, or shortly before, trial. In Owens-Corning Fiberglas Corp. v. McKenna, 726 So.2d 361, 363 (Fla. 3d DCA 1999), we held that the trial court properly excluded an expert who examined the plaintiff three days before trial and failed to provide a report of his examination before trial began. Similarly, in Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Co., 48 So.3d 976, 994 (Fla. 3d DCA 2010), we held that the admission of an expert’s surprise testimony was an abuse of discretion, where it was based in part on the work of two people whose work the expert said, in his deposition, he had not reviewed.
The prejudice to Thompson’s case was obvious. She had already presented the testimony of her expert and had not contradicted the testimony of Dr. Freshwater because the anticipated evidence was entirely different from that which was ultimately given. The PowerPoint slides were never shown to Thompson’s counsel before their own expert had testified. The trial court’s finding of no prejudice seems to confuse the measurement of the ulnar variance, which Dr. Freshwater disclosed before trial, with the measurement of the volar tilt, which he did not disclose. It was the latter measurement, which he testified at deposition he could not measure, that was the basis of his new opinion.
Additionally, the rules of discovery certainly encompassed the disclosure of the PowerPoint slides. The Florida Supreme Court has frequently reiterated the importance of broad and liberal discovery rules in our adversary system. See Alterra Healthcare Corp. v. Estate of Shelley, 827 So.2d 936, 948 (Fla.2002). Trial courts should not allow litigants to circumvent the rules by preparing these types of eviden-tiary props at the last minute. Here, the trial court allowed Dr. Freshwater to underscore his testimony with an extensive use of PowerPoint slides that were only disclosed on the evening before the last day of trial. While we do not reverse on this ground alone, we strongly condemn such a strategy.
Reversed and remanded for a new trial.