# Third District Court of Appeal

## State of Florida

Opinion filed June 2, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-406
Lower Tribunal No. 17-104
_____

**Angel Montero,**
Appellant,

vs.

**Raul Corzo, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Abby Cynamon, Judge.

Fischer Redavid PLLC, and Jordan S. Redavid (Hollywood), for appellant.

Walton Lantaff Schroeder & Carson LLP, and John P. Joy and Sara M. Sandler Cromer (Fort Lauderdale); Cole Scott & Kissane, P.A., and Scott A. Cole, for appellees.

Before EMAS, C.J., and SCALES and LOBREE, JJ.

EMAS, C.J.

**INTRODUCTION**

Angel Montero, plaintiff below, appeals a final judgment following a jury trial, and the denial of his motion for new trial. Montero contends that the jury verdict award of $30,000 for injuries he sustained in an automobile accident was inadequate and resulted from several errors committed during the trial. Following our review, we conclude that the trial court abused its discretion[1] in allowing the introduction of surveillance video, and the testimony of the investigator who recorded the video, both of which were untimely disclosed to Montero less than three business days before trial.[2]

**RELEVANT FACTS AND BACKGROUND**

Montero and his wife were rear-ended by a vehicle driven by Raul Corzo, and they suffered injuries.[3] After Montero and his wife filed suit, Corzo admitted fault, and the case proceeded to a jury trial solely on the question of non-economic damages.[4] Ultimately, the jury found that Corzo's negligence was a legal cause of permanent harm to Montero, awarding him

---

[1] Our standard of review of this issue is abuse of discretion. State v. Martin, 277 So. 3d 265, 268 (Fla. 3d DCA 2019).

[2] Our reversal and remand for a new trial on this basis renders it unnecessary for us to address the other issues raised on appeal.

[3] The vehicle was owned by Corzo's mother, Marianeca Corzo. For ease of reference, the defendants below are referred to throughout this opinion as Corzo.

[4] Montero's wife settled her claims with Corzo prior to trial.

$30,000 for past non-economic damages and zero for future non-economic damages. The trial court denied Montero's motion for new trial, and this appeal follows.

The trial in this case was originally set for the trial period commencing November 20, 2017. The trial court's uniform order setting the case for this trial period directed that parties were to file their witness lists "at least 90 days prior to the first day of the trial period" and their exhibit lists "at least 30 days prior to the first day of the trial period," with the actual exhibits being made available for examination and inspection "no later than 5 days prior to the first day of the trial period." However, the case was continued and eventually set for the trial period commencing August 19, 2019. The order resetting the trial provided that "All prior orders are in full force and effect."

At calendar call on August 8, 2019, trial was set to begin on Monday, August 26 (i.e., the second week of the trial period), and the trial court thereafter entered a second trial order which required counsel to meet at least five days before <u>trial</u> (rather than five days prior to the first day of the trial <u>period</u>) to submit for inspection all exhibits to be introduced at trial.[5]

---

[5] Note, however, that this pre-trial meeting was not for the purpose of *disclosing* to opposing counsel, for the first time, the existence of witnesses and exhibits. As indicated *supra*, those disclosures were required to have been made at least 90 days (for witnesses) and 30 days (for exhibits) before the first day of the trial period.

On Wednesday, August 21, 2019 (three business days before the Monday, August 26th trial date), Corzo provided to Montero, for the first time, a video of surveillance recorded in March and April 2019, as well as a surveillance report prepared by an unnamed and undisclosed investigator. Neither this 2019 surveillance video, nor the investigator, had been disclosed by Corzo in his witness and exhibit lists. Instead, Corzo's witness list broadly and vaguely indicated "any and all surveillance personnel obtaining surveillance film or videotape of the Plaintiff;"[6] his exhibit list similarly indicated "any and all surveillance film or videotape taken of the Plaintiff."

The next day, Montero moved in limine to preclude the introduction of the video, arguing this untimely disclosed evidence was an attempt to ambush him on the eve of trial. The court heard argument on this motion on

---

[6] Importantly, in the course of discovery, Corzo's prior trial counsel had provided to Montero a surveillance video from <u>2018</u>, together with the name of the surveillance company that had recorded the 2018 video. However, Corzo failed to provide this new, 2019 surveillance video, and the company that recorded it, until three business days before trial. Additionally, Corzo failed to provide the name of the individual who recorded the video and would testify about it at trial, until after jury selection had begun. We note further that the 2018 and 2019 videos were recorded by different companies and by different individuals, and there was nothing in the record that would have placed Montero on notice of the existence of this separate, additional and new surveillance video. Finally, although the prior surveillance video of Montero—conducted in 2018—had been properly provided in discovery and was not the subject of Montero's motion in limine—Corzo did not seek to introduce that 2018 surveillance video at trial.

4

the first day of trial, but ultimately denied the motion without engaging in the analysis required under Binger v. King Pest Control, 401 So. 2d 1310, 1313 (Fla. 1981);[7] indeed, the trial court did not even make a finding whether Corzo's disclosures were in fact untimely under the terms of its pretrial order.

## ANALYSIS AND DISCUSSION

The Florida Supreme Court has instructed: "A primary purpose in the adoption of the Florida Rules of Civil Procedure is to prevent the use of surprise, trickery, bluff and legal gymnastics." Surf Drugs, Inc. v. Vermette, 236 So. 2d 108, 111 (Fla. 1970). Thus, the general rule in Florida is that there be "complete disclosure."[8] Importantly, "[r]equiring reasonable compliance with a pretrial order directing witnesses' disclosure will help to eliminate surprise and avoid trial by 'ambush.'" Binger, 401 So. 2d at 1314. A general reference to a category of witnesses and evidence, as Corzo provided in the instant case ("any and all surveillance film or videotape taken

---

[7] Indeed, it was not until after the trial court denied the motion in limine and jury selection had begun, that Corzo's counsel disclosed the actual name of the person who would testify at trial about the surveillance video as a predicate to its introduction.

[8] There are some exceptions to this general rule, e.g., evidence which implicates the work-product privilege. However, even that evidence becomes discoverable if it is intended for use at trial, either substantively or as impeachment evidence. Dodson v. Persell, 390 So. 2d 704, 707 (Fla. 1980) (holding that once the materials or testimony are intended for use at trial, any work product privilege that previously existed "ceases.")

5

of the Plaintiff;" "any and all surveillance personnel obtaining surveillance film or videotape of the Plaintiff"), fails to satisfy the requirement of complete disclosure.[9]  Binger, 401 So. 2d at 1313 (holding that "a pretrial order directing the parties to exchange the names of witnesses requires a listing or notification of all witnesses that the parties reasonably foresee will be called to testify, whether for substantive, corroborative, impeachment or rebuttal purposes. Obviously, a general reference to 'any and all necessary' impeachment or rebuttal witnesses, as was the case here, constitutes inadequate disclosure").

The failure of a party to properly disclose evidence "will bar the information's use as evidence in the cause unless the trial court finds that

---

[9] In fact, this case presents an example of how such broad references to categories of exhibits or witnesses can be misleading and undermine the purpose of complete disclosure.  As indicated *supra* note 6, in the course of pretrial discovery, Corzo's prior trial counsel had properly and timely provided to Montero a surveillance video from 2018, as well as the name of the investigator who had recorded that surveillance video.  However, Corzo did not provide this new, 2019 surveillance video until five days before trial, and did not name the witness until trial had begun.  There was nothing in the record that would have placed Montero on notice of the existence of this separate and additional surveillance video.  The general reference to "any and all surveillance videos" and "any and all surveillance personnel" could reasonably have led Montero to conclude that Corzo had already disclosed all surveillance video to be introduced as well as the names of the witnesses who would testify regarding same.  Had Corzo timely complied with the pretrial order, consistent with the well-established "complete disclosure" requirement of Binger, no issue would have arisen in this case.

the failure to disclose was not willful and either that no prejudice will result or that any existing prejudice may be overcome by allowing a continuance of discovery during a trial recess." Dodson v. Persell, 390 So. 2d 704, 708 (Fla. 1980).

In Binger, 401 So. 2d at 1314, the Florida Supreme Court reaffirmed that in exercising its discretion in determining whether to permit an untimely disclosed witness to testify, the trial court should be guided largely by whether the testimony will prejudice the objecting party. [10] "Prejudice" under Binger "refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony." Id. In making this determination, the Binger Court set forth several factors a trial court should consider:

> (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the

---

[10] The Binger analysis is not limited in application to witnesses; it applies with equal force to the untimely disclosure of exhibits. See, e.g., Thompson v. Wal-Mart Stores, Inc., 60 So. 3d 440 (Fla. 3d DCA 2011); Reive v. Deutsche Bank Nat. Tr. Co., 190 So. 3d 93 (Fla. 4th DCA 2015); Claussen v. State, Dept. of Transp., 750 So. 2d 79 (Fla. 2d DCA 1999); Tomlinson-McKenzie v. Prince, 718 So. 2d 394 (Fla. 4th DCA 1998); Smith v. Univ. Med. Ctr., Inc., 559 So. 2d 393 (Fla. 1st DCA 1990).

7

proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.

As such, it is incumbent upon the trial court to analyze these Binger factors before exercising its discretion to admit or exclude late-disclosed exhibits or witness testimony. This court has previously held that a trial court's failure to do so will result in reversal. See Deutsche Bank Nat. Tr. Co. v. Perez, 180 So. 3d 1186 (Fla. 3d DCA 2015) (reversing where trial court failed to consider Binger factors); Lugo v. Fla. E. Coast Ry. Co., 487 So. 2d 321, 322, 323–24 (Fla. 3d DCA 1986) (holding exclusion of expert witness for party's failure to strictly comply with pre-trial order was reversible error where trial court failed to consider the Binger factors which should have entered into its exercise of discretion). See also J.S.L. Constr. Co. v. Levy, 994 So. 2d 394 (Fla. 3d DCA 2008) (holding it was trial by ambush to allow a witness, who was only named two weeks prior to trial, to testify); Reive v. Deutsche Bank Nat. Tr. Co., 190 So. 3d 93 (Fla. 4th DCA 2015) (holding that admission of witnesses and documents not timely disclosed constituted "surprise in fact" and violated Binger.)[11]

---

[11] Although Corzo argues the admission was harmless error at best, given the existence and timely disclosure of the 2018 surveillance video, Corzo chose not to introduce the 2018 video at trial. Further, neither of the surveillance videos was made a part of the record, preventing any comparison of the videos to determine the nature or significance of differences in their respective content. More to the point of course, it is not

8

## CONCLUSION

Accordingly, because the trial court failed to consider and analyze the Binger factors, and failed to make any findings, including the failure to make a determination of Binger prejudice,[12] we reverse and remand for a new trial.

Reversed and remanded.

---

for this court to make such comparisons or to determine whether permitting the introduction of the untimely disclosed 2019 video, in light of the timely disclosed 2018 video, would (or would not) have resulted in prejudice under a Binger analysis. Such a determination falls upon the trial court to do so in the first instance.

[12] While the record does not contain the 2019 surveillance video, Corzo contended at trial that the video showed Montero engaging in activities that he claimed he was unable to perform after suffering permanent injury from the accident. In an attempt to blunt the impact of this untimely disclosed evidence, Montero sought to ask his medical expert (who opined on the permanency of Montero's injury) whether that medical opinion changed after viewing the 2019 surveillance video. Ironically, Corzo objected to this line of questioning, contending Montero was attempting to introduce a new opinion that had not been timely disclosed to Corzo before trial. The trial court sustained the objection and did not permit Montero to ask the question or explore this issue with his medical expert.