# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-1919
_____

JOHN A. MILLER,

    Appellant,

    v.

JANAY CONNEY,

    Appellee.

_____

On appeal from the Circuit Court for Alachua County.
Gloria R. Walker, Judge.

June 18, 2025

PER CURIAM.

Appellant, John A. Miller, appeals a final judgment entered in favor of Appellee, Janay Conney, raising three issues. For the reasons that follow, we agree with Miller that the trial court erred by admitting into evidence the radiofrequency ablation ("RFA") cost estimate and Dr. Donna Saatman's corresponding testimony, which served as Conney's only evidence of her future medical expenses. Thus, we reverse the award for future medical expenses and remand for a new trial on those damages only. We affirm as to the remaining two issues without discussion.

## Background

In June 2021, Conney sued Miller for damages arising from an automobile collision that was allegedly caused by Miller's

negligent operation of a vehicle. Miller denied liability and damages. Pursuant to the trial court's Order Scheduling Pretrial Conference and Jury Trial, the parties were required to file and serve no later than thirty days before the December 15, 2022, pretrial conference "a complete list of witnesses who are expected to testify at trial, together with . . . a concise description of the subject matter of their testimonies" and "a schedule of all exhibits and documentary evidence that the attorney will offer during trial." The order provided that no witness or document would be permitted if not disclosed as required by the order. Conney indicated in her Witness List that Dr. Saatman, her treating physician, "will testify about Ms. Conney's injuries, treatment, causation and permanency." In its Pretrial Order of December 15, 2022, the trial court stated that discovery was closed, except that the parties agreed to continue to take depositions through December 31st. During her deposition on December 15, 2022, Dr. Saatman testified that she had determined that Conney was a candidate for RFA, a pain-blocking procedure, and she was recommending a total of five such treatments. Dr. Saatman did not know the cost of an RFA as she could only estimate the physician component.

Jury trial began on January 3 and concluded on January 5, 2023. At the beginning of the second day of trial, Conney's counsel stated that he had just received the day before a cost estimate for the RFA procedure Conney was scheduled to have the following week. The cost estimate was dated January 3, 2023, was prepared by the administrator for Florida Surgery Consultants, where Dr. Saatman practiced, and provided that the recommended RFA would cost between $35,000 and $45,000.

Miller objected to the cost estimate, arguing that it was untimely as it was not disclosed pursuant to the pretrial order and constituted a new, surprise opinion because Dr. Saatman could not provide even a rough estimate of the total cost of an RFA procedure at her pretrial deposition. When the court asked about prejudice, Miller stated that "it's a new opinion under *Binger vs. King Pest Control*. It's a surprise opinion." Miller asserted that Conney did not make him aware of the cost estimate until mid-trial, and Conney would rely on it to prove her future medical costs. The trial court ruled that *Binger* was inapplicable because the cost

2

estimate was not a new opinion given that Miller knew about the recommended RFA procedures and that there would be a cost associated with them. Accordingly, the trial court overruled Miller's objection and admitted the RFA cost estimate into evidence. The court added that if Miller disagreed with the estimated amount, his expert could address its reasonableness. The court denied Miller's ensuing motion for a continuance to consult with his expert, Dr. Troy Lowell, regarding future medical costs, stating that Dr. Lowell was not scheduled to testify until 1 p.m.

During trial, Dr. Saatman testified that unlike the prior treatments she administered at her practice, the RFA must be performed at a surgery center because it required anesthesia and that she was recommending five RFAs for Conney. When asked over the defense's renewed objection[*] about the estimated cost of an RFA, Dr. Saatman read into the record the administrator's letter estimating the cost to be $35,000 to $45,000. Dr. Saatman did not know exactly what was included in the cost estimate and indicated that would be a question for the administrator who had prepared it. The administrator was not listed as a witness and did not testify at trial, and there was no other evidence of the cost of Conney's future medical expenses.

---

[*] Defense counsel did not argue hearsay as the basis for his objection to the cost estimate letter or Dr. Saatman's corresponding testimony during trial, thereby failing to preserve it for appeal. *See* § 924.051(1)(b), Fla. Stat. (2023) ("'Preserved' means that an issue, legal argument, or objection to evidence was timely raised before, and ruled on by, the trial court, and that the issue, legal argument, or objection to evidence was sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefor."); *State v. Johnson*, 295 So. 3d 710, 713 (Fla. 2020) (explaining that to preserve an error for appellate review, the party must make a contemporaneous objection and state a legal ground for it, and the argument on appeal must be the specific contention that was asserted as the legal ground for the objection).

After the trial court denied Miller's motion for directed verdict as to the cost of the RFAs, the jury returned a verdict finding that Miller's negligence was the legal cause of Conney's injury, that Conney was not negligent, and that she sustained a permanent injury. The jury awarded Conney $200,000 for future medical expenses, $72,294.89 for past medical expenses, and $37,500 for past and future pain and suffering, disability, physical impairment, inconvenience, aggravation of a physical disease or defect, and loss of capacity for the enjoyment of life. Miller moved for a new trial in part on the basis that the RFA cost estimate letter and Dr. Saatman's new testimony about the cost estimate were improperly admitted into evidence to his significant prejudice under the *Binger* standard. The trial court denied the motion and entered a Final Judgment for Conney in the amount of $298,656.97. This appeal follows.

## Analysis

On appeal, Miller argues that the trial court erred by denying his motions for new trial and directed verdict based on its improper admission of the RFA cost estimate and Dr. Saatman's corresponding new opinion testimony under *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981). The standard of review applicable to the trial court's ruling on the admissibility of evidence is a clear abuse of discretion. *Shaw v. Jain*, 914 So. 2d 458, 460 (Fla. 1st DCA 2005) (citing *Ray v. State,* 755 So. 2d 604, 610 (Fla. 2000)).

In *Binger,* the Florida Supreme Court set forth the test that trial courts should utilize for determining whether undisclosed testimony should be excluded as prejudicial:

> [A] trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order. The discretion to do so must not be exercised blindly, however, and should be guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court's exercise of discretion are: (i) the objecting

4

party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.

401 So. 2d at 1313–14 (footnotes omitted).

Although *Binger* involved an undisclosed witness, "[t]he *Binger* analysis has subsequently been applied to cases where an expert changes his or her opinion or gives a new opinion, which results in surprise and prejudice to the opposing party." *Drs. Co. v. Plummer*, 210 So. 3d 711, 718 (Fla. 5th DCA 2017). Additionally, the *Binger* analysis is not limited to opinion testimony as it has been applied to late-disclosed exhibits and witness testimony. *See Montero v. Corzo*, 320 So. 3d 976, 980 (Fla. 3d DCA 2021) (stating that the trial court must analyze the *Binger* factors "before exercising its discretion to admit or exclude late-disclosed exhibits or witness testimony"); *Smith v. Univ. Med. Ctr., Inc.*, 559 So. 2d 393, 395 (Fla. 1st DCA 1990) (applying *Binger* to conclude that the trial court erred in denying the appellant's motions for mistrial and new trial based on the appellee's failure to disclose the existence of a housekeeping map of the medical center where the appellant was injured).

Here, in finding *Binger* inapplicable, the trial court failed to acknowledge that while Miller was aware of Dr. Saatman's recommendation for RFA procedures, the estimated cost of those procedures was new evidence. Conney's argument that the cost of the RFAs was not a "new" opinion is meritless. Conney listed Dr. Saatman as a treating physician who would testify about her "injuries, treatment, causation and permanency" but excluded any mention of Dr. Saatman testifying as to the cost of future treatments. In addition, Dr. Saatman could not testify during her pretrial deposition about the total cost of an RFA procedure

5

because she lacked personal knowledge. The RFA cost estimate was not prepared until the day of the trial, and this new evidence was not disclosed until the second day of trial, after discovery had closed. Until that point, Miller could reasonably expect that even if Conney were to claim damages for future medical costs, she would be unable to prove them because she did not disclose any exhibits or witnesses in that regard. The trial court should not have allowed Conney to continue discovery in the middle of the trial when it had ordered that no discovery obtained after the pretrial cutoff would be admitted. Thus, Conney's production of the cost estimate letter mid-trial is a classic example of surprise and trial by ambush. In addition to improperly admitting the RFA cost estimate, the trial court also abused its discretion in allowing Dr. Saatman to offer new evidence on future medical care costs by relying solely on that estimate when she had testified during her pretrial deposition that she could not estimate the total cost of an RFA procedure because she lacked personal knowledge. At trial, Dr. Saatman served as a conduit for the administrator's previously undisclosed cost estimate.

We are not persuaded by the trial court's suggestion that Miller could cure any prejudice by having his expert testify about the reasonableness of the cost estimate. It was Conney's burden to present evidence from which the jury could determine with reasonable certainty the amount of her claimed future medical expenses. *See Gen. Emps. Ins. Co. v. Isaacs*, 206 So. 3d 62, 63 (Fla. 4th DCA 2016). The issue of the new evidence arose during the second day of trial, and in light of the trial court's denial of the motion for a continuance, there is no record evidence showing that defense counsel had a sufficient opportunity to consult with Dr. Lowell before he took the stand early that afternoon.

For the foregoing reasons, we conclude that the trial court abused its discretion by admitting into evidence the RFA cost estimate and Dr. Saatman's corresponding testimony, which served as Conney's only evidence of her future medical expenses. Therefore, we reverse the award for future medical expenses and remand for a new trial on those damages only. We affirm the final judgment in all other respects.

AFFIRMED in part, REVERSED in part, and REMANDED with directions.

LEWIS and ROBERTS, JJ., concur; TANENBAUM, J., concurs with opinion.

––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––

TANENBAUM, J., concurring.

Mr. Miller had a right to a fair trial. *Cf. Lee v. Sovereign Camp, W.O.W.*, 152 So. 17, 18 (Fla. 1934) (recognizing that "ends of justice demand that [a party] shall not suffer the loss of [the] right to a fair trial on the merits" based on a trial court's error). On the question of future damages, he did not get one. The majority opinion sets out the legal basis for our granting him a new trial on that question. I write separately to note another reason the trial was unfair: because the trial court allowed rank hearsay to be admitted as the sole evidence proving Ms. Conney's future damages. Had Mr. Miller made a proper hearsay objection, this type of prejudicial error also would have entitled Mr. Miller to a new trial.

A witness generally is not competent to testify unless he can do so based on personal knowledge—that is, unless he can speak to a fact using his five senses (*viz.* seeing, hearing, smelling, tasting, and feeling) plus his lay ability to infer from the use of those five senses. *See* Fla. R. Evid. 90.604 (precluding a witness, except an expert witness, from testifying to a matter unless evidence shows "that the witness has personal knowledge of the matter"); Fla. R. Evid. 90.701 (allowing a non-expert witness to testify "about what he or she perceived [] in the form of inference and opinion" under limited circumstances). An expert witness may offer opinion testimony on a matter about which he does not have personal knowledge if he is "qualified [] by knowledge, skill,

7

experience, training, or education" and can base his opinion on "sufficient facts or data," use "reliable principles and methods," and apply those "principles and methods reliably to the facts of the case." Fla. R. Evid. 90.702.

At trial, Ms. Conney had her treating physician, Dr. Saatman, testify as an expert witness regarding Ms. Conney's future medical care. Dr. Saatman opined that Ms. Conney needed pain-blocking treatment, but she had admitted that she did not know the cost of that care. Although Dr. Saatman was no doubt qualified by her education, training, and experience to offer a medical opinion on whether Ms. Conney needed the treatment, how much her medical practice charges for that procedure is not a matter of opinion. The cost for that procedure is a matter of fact, meaning testimony offered to prove that fact must come from a witness with personal knowledge. Dr. Saatman most assuredly was not that witness.

Dr. Saatman nevertheless testified from the surprise letter that the office administrator wrote. That letter stated as follows:

> As requested, the estimated cost for the recommended cervical radiofrequency ablation to be performed by Dr. Donna Saatman would be approximately $35,000-$45,000. Final cost will be determined based on surgical procedure performed.

> This estimate includes the cost of any applicable supplies, facility and anesthesia.

> Please let me know if you have any questions.

The letter was added, over objection, to the set of documents and records on which Dr. Saatman supposedly relied to reach her opinion about Ms. Conney's treatment. Because the cost estimate was a matter of fact, not opinion, adding the letter to Dr. Saatman's opinion data set did not suddenly make Dr. Saatman competent to testify as to that fact.

The letter itself was obvious, inadmissible hearsay—it having been written by someone who did not testify at trial. *See* Fla. R. Evid. 90.801(1)(b) (defining hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted"); *id.*

8

(2) (setting out conditions that would exclude a statement from the hearsay definition, provided the statement's maker "testifies at the trial or hearing and is subject to cross-examination concerning the statement"); Fla. R. Evid. 90.802 (making hearsay inadmissible, except as otherwise provided). When Ms. Conney's counsel put the surprise letter (one manufactured the day before to fill a gaping hole in Ms. Conney's case) into evidence through Dr. Saatman, Dr. Saatman became a conduit for the introduction of otherwise inadmissible evidence. This use of an expert at trial is not permitted. *See Linn v. Fossum*, 946 So. 2d 1032, 1037–38 (Fla. 2006) (noting routine recognition that "an expert's testimony may not merely be used as a conduit for the introduction of the otherwise inadmissible evidence" (internal quotations omitted)).

Many of the evidentiary rules we have are there to guarantee an orderly and fair trial to both sides. Hearsay is inherently unreliable and untrustworthy, and its admission can diminish the fairness of the trial by putting before the jury evidence that cannot be tested through in-court observation and cross-examination. *See generally Crawford v. Washington*, 541 U.S. 36 (2004). Unfortunately, despite rules against the unfair admission of such hearsay, that is what happened here. *See Linn*, 946 So. 2d at 1038 ("When an expert's testimony acts as a conduit for inadmissible hearsay, the evidence is presented to the jury without affording the opposing party an opportunity to cross-examine and impeach the source of the hearsay.").

Regardless of its surprise nature, the letter—and the key fact that it conveyed—never should have been in evidence. The letter's author presumably did have personal knowledge regarding what the treatment center charged for the procedure, so the future cost of the procedure needed to be proven through the author's testimony at trial, where she could be subject to cross-examination and impeachment by Mr. Miller. The trial court's decision to allow the contents of the letter in through Dr. Saatman's testimony deprived Mr. Miller of this opportunity. Mr. Miller's argument on appeal is spot on:

> Nor could Miller effectively cross examine Dr. Saatman regarding the reasonable cost of an RFA procedure because she lacked personal knowledge and merely

9

served as a conduit for Vazquez's undisclosed opinion on that issue. Dr. Saatman admitted that she never even saw the estimate before testifying, and she could not explain how it was prepared. Nor could Dr. Saatman identify the specific costs that comprised the total amount; she could only say that amount seemed reasonable.

Mr. Miller objected vigorously, but he nevertheless did not couch his objection specifically in terms of hearsay, at least not in the way he did above in his initial brief. The Legislature tells us we can "grant a new trial on the basis of admitted [] evidence when a substantial right of the party is adversely affected," provided there is a timely, specific objection. § 90.104(1)(a), Fla. Stat. Because Mr. Miller did not specifically object on the ground that the testimony was hearsay, we are not reversing on this basis. But if Mr. Miller had made the hearsay objection, the trial court's error in allowing obvious hearsay to come in—regarding a fact that Ms. Conney had failed to prove with any other evidence—would alone have justified reversal.

The Legislature tells us we cannot grant a new trial because of "improper admission [] of evidence," unless we determine that the improper admission "has resulted in a miscarriage of justice." § 59.041, Fla. Stat. According to the supreme court, Ms. Conney, as "the beneficiary of the error," must demonstrate "that there is no reasonable possibility that the error contributed to the verdict." *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1256 (Fla. 2014). We, in turn, must ask whether "the admission of evidence that should been excluded" affected the outcome. *Id.* The *only* evidence (such as it was) regarding the amount of future costs was the information contained in the inadmissible letter.

In fact, had Mr. Miller made a more focused motion for directed verdict—one arguing that the letter (or Dr. Saatman's testimony about it), as inadmissible hearsay, was incompetent evidence to prove future damages, and that there was no competent evidence to prove those damages—we likely could have simply directed that a judgment be entered in his favor on future damages. *Cf. Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 983 (Fla. 2018) (explaining that to obtain a directed verdict, a

movant "must show there is no competent, substantial evidence in the record which would permit a reasonable factfinder to reach" its verdict). At a minimum, though, Ms. Conney cannot realistically say the trial court's error—admitting testimony about what the administrator said as to the treatment costs—did not affect the verdict, and thereby, the trial's fairness. Regardless of whether we look at the unwarranted surprise or the unfair use of hearsay, Mr. Miller is entitled to a new trial regarding future damages.

———————————————————

Hinda Klein and Samuel B. Spinner of Conroy Simberg, Hollywood, for Appellant.

Michael J. Korn of Korn & Zehmer, P.A., Jacksonville; Frank Fratello, Jr., and Robert S. Gunn, IV, of Farah and Farah, Jacksonville, for Appellee.